# REEVES *v.* SANDERSON PLUMBING PRODUCTS, INC.

No. 99–536.   Argued March 21, 2000—Decided June 12, 2000

O'CONNOR, J., delivered the opinion for a unanimous Court. GINS-BURG, J., filed a concurring opinion, *post*, p. 154.

*Jim Waide* argued the cause for petitioner. With him on the briefs were *David A. Chandler, Victor I. Fleitas, Eric Schnapper*, and *Alan B. Morrison.*

*Patricia A. Millett* argued the cause for the United States et al. as *amici curiae* urging reversal. On the brief were *Solicitor General Waxman, Deputy Solicitor General Underwood, Matthew D. Roberts, C. Gregory Stewart*, and *Philip B. Sklover.*

*Taylor B. Smith* argued the cause for respondent. With him on the brief was *Berkley N. Huskison.*\*

---

\*Briefs of *amici curiae* urging reversal were filed for the AARP by *Thomas W. Osborne, Laurie A. McCann, Sally Dunaway*, and *Melvin Radowitz;* for the Association of Trial Lawyers of America by *Jeffrey Robert White;* for the Hispanic National Bar Association by *Seth J. Benezra, Luis Perez*, and *Gilbert M. Roman;* for the Lawyers' Committee for Civil Rights Under Law et al. by *Daniel F. Kolb, Norman Redlich, Barbara R. Arnwine, Thomas J. Henderson, Richard T. Seymour, Teresa A. Ferrante, Elainy R. Jones, Theodore M. Shaw, Norman J. Chachkin, Charles Stephen Ralston, Dennis C. Hayes, Antonia Hernandez, Judith L. Lichtman, Donna R. Lenhoff, Marcia D. Greenberger, Judith C. Appelbaum, Martha F. Davis, Sara L. Mandelbaum*, and *Steven R. Shapiro;* and for the National Employment Lawyers Association by *Paul W. Mollica* and *Paula A. Brantner.*

Briefs of *amici curiae* urging affirmance were filed for the Alabama Retail Association by *John J. Coleman III* and *Marcel L. Debruge;* for the Chamber of Commerce of the United States by *Marshall B. Babson, Stan-*

JUSTICE O'CONNOR delivered the opinion of the Court.

This case concerns the kind and amount of evidence necessary to sustain a jury's verdict that an employer unlawfully discriminated on the basis of age. Specifically, we must resolve whether a defendant is entitled to judgment as a matter of law when the plaintiff's case consists exclusively of a prima facie case of discrimination and sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory explanation for its action. We must also decide whether the employer was entitled to judgment as a matter of law under the particular circumstances presented here.

## I

In October 1995, petitioner Roger Reeves was 57 years old and had spent 40 years in the employ of respondent, Sanderson Plumbing Products, Inc., a manufacturer of toilet seats and covers. 197 F. 3d 688, 690 (CA5 1999). Petitioner worked in a department known as the "Hinge Room," where he supervised the "regular line." *Ibid.* Joe Oswalt, in his mid-thirties, supervised the Hinge Room's "special line," and Russell Caldwell, the manager of the Hinge Room and age 45, supervised both petitioner and Oswalt. *Ibid.* Petitioner's responsibilities included recording the attendance and hours of those under his supervision, and reviewing a weekly report that listed the hours worked by each employee. 3 Record 38–40.

In the summer of 1995, Caldwell informed Powe Chesnut, the director of manufacturing and the husband of company president Sandra Sanderson, that "production was down" in

ley Strauss, *Stephen A. Bokat,* and *Robin S. Conrad;* for the Equal Employment Advisory Council by *Ann Elizabeth Reesman;* for the Product Liability Advisory Council, Inc., by *Andrew L. Frey, Charles Rothfeld,* and *Stephen M. Shapiro;* for the Society for Human Resource Management by *Peter J. Petesch, Thomas J. Walsh, Jr., Timothy S. Bland,* and *John E. Duvall;* and for the Texas Association of Business and Chamber of Commerce by *Dean J. Schaner* and *Scott M. Nelson.*

the Hinge Room because employees were often absent and were "coming in late and leaving early." 4 *id.*, at 203–204. Because the monthly attendance reports did not indicate a problem, Chesnut ordered an audit of the Hinge Room's timesheets for July, August, and September of that year. 197 F. 3d, at 690. According to Chesnut's testimony, that investigation revealed "numerous timekeeping errors and misrepresentations on the part of Caldwell, Reeves, and Oswalt." *Ibid.* Following the audit, Chesnut, along with Dana Jester, vice president of human resources, and Tom Whitaker, vice president of operations, recommended to company president Sanderson that petitioner and Caldwell be fired. *Id.*, at 690–691. In October 1995, Sanderson followed the recommendation and discharged both petitioner and Caldwell. *Id.*, at 691.

In June 1996, petitioner filed suit in the United States District Court for the Northern District of Mississippi, contending that he had been fired because of his age in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, 29 U. S. C. § 621 *et seq.* At trial, respondent contended that it had fired petitioner due to his failure to maintain accurate attendance records, while petitioner attempted to demonstrate that respondent's explanation was pretext for age discrimination. 197 F. 3d, at 692–693. Petitioner introduced evidence that he had accurately recorded the attendance and hours of the employees under his supervision, and that Chesnut, whom Oswalt described as wielding "absolute power" within the company, 3 Record 80, had demonstrated age-based animus in his dealings with petitioner. 197 F. 3d, at 693.

During the trial, the District Court twice denied oral motions by respondent for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure, and the case went to the jury. 3 Record 183; 4 *id.*, at 354. The court instructed the jury that "[i]f the plaintiff fails to prove age was a determinative or motivating factor in the decision to

terminate him, then your verdict shall be for the defendant."
Tr. 7 (Jury Charge) (Sept. 12, 1997). So charged, the jury
returned a verdict in favor of petitioner, awarding him
$35,000 in compensatory damages, and found that respond-
ent's age discrimination had been "willfu[l]." 197 F. 3d, at
691. The District Court accordingly entered judgment for
petitioner in the amount of $70,000, which included $35,000
in liquidated damages based on the jury's finding of will-
fulness. *Ibid.* Respondent then renewed its motion for
judgment as a matter of law and alternatively moved for a
new trial, while petitioner moved for front pay. 2 Record,
Doc. Nos. 36, 38. The District Court denied respondent's
motions and granted petitioner's, awarding him $28,490.80 in
front pay for two years' lost income. 2 *id.,* Doc. Nos. 40, 41.

The Court of Appeals for the Fifth Circuit reversed, hold-
ing that petitioner had not introduced sufficient evidence to
sustain the jury's finding of unlawful discrimination. 197 F.
3d, at 694. After noting respondent's proffered justification
for petitioner's discharge, the court acknowledged that peti-
tioner "very well may" have offered sufficient evidence for
"a reasonable jury [to] have found that [respondent's] expla-
nation for its employment decision was pretextual." *Id.,* at
693. The court explained, however, that this was "not dis-
positive" of the ultimate issue—namely, "whether Reeves
presented sufficient evidence that his age motivated [re-
spondent's] employment decision." *Ibid.* Addressing this
question, the court weighed petitioner's additional evidence
of discrimination against other circumstances surrounding
his discharge. See *id.,* at 693–694. Specifically, the court
noted that Chesnut's age-based comments "were not made
in the direct context of Reeves's termination"; there was no
allegation that the two other individuals who had recom-
mended that petitioner be fired (Jester and Whitaker) were
motivated by age; two of the decisionmakers involved in
petitioner's discharge (Jester and Sanderson) were over the
age of 50; all three of the Hinge Room supervisors were

accused of inaccurate recordkeeping; and several of respondent's management positions were filled by persons over age 50 when petitioner was fired. *Ibid.* On this basis, the court concluded that petitioner had not introduced sufficient evidence for a rational jury to conclude that he had been discharged because of his age. *Id.*, at 694.

We granted certiorari, 528 U. S. 985 (1999), to resolve a conflict among the Courts of Appeals as to whether a plaintiff's prima facie case of discrimination (as defined in *McDonnell Douglas Corp.* v. *Green*, 411 U. S. 792, 802 (1973)), combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision, is adequate to sustain a finding of liability for intentional discrimination. Compare *Kline* v. *TVA*, 128 F. 3d 337 (CA6 1997) (prima facie case combined with sufficient evidence to disbelieve employer's explanation always creates jury issue of whether employer intentionally discriminated); *Combs* v. *Plantation Patterns*, 106 F. 3d 1519 (CA11 1997) (same), cert. denied, 522 U. S. 1045 (1998); *Sheridan* v. *E. I. DuPont de Nemours & Co.*, 100 F. 3d 1061 (CA3 1996) (same) (en banc), cert. denied, 521 U. S. 1129 (1997); *Gaworski* v. *ITT Commercial Finance Corp.*, 17 F. 3d 1104 (CA8) (same), cert. denied, 513 U. S. 946 (1994); *Anderson* v. *Baxter Healthcare Corp.*, 13 F. 3d 1120 (CA7 1994) (same); *Washington* v. *Garrett*, 10 F. 3d 1421 (CA9 1993) (same), with *Aka* v. *Washington Hospital Center*, 156 F. 3d 1284 (CADC 1998) (en banc) (plaintiff's discrediting of employer's explanation is entitled to considerable weight, such that plaintiff should not be routinely required to submit evidence over and above proof of pretext), and with *Fisher* v. *Vassar College*, 114 F. 3d 1332 (CA2 1997) (en banc) (plaintiff must introduce sufficient evidence for jury to find both that employer's reason was false and that real reason was discrimination), cert. denied, 522 U. S. 1075 (1998); *Rhodes* v. *Guiberson Oil Tools*, 75 F. 3d 989 (CA5 1996) (same); *Theard* v. *Glaxo, Inc.*, 47 F. 3d

676 (CA4 1995) (same); *Woods* v. *Friction Materials, Inc.*, 30 F. 3d 255 (CA1 1994) (same).

## II

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U. S. C. § 623(a)(1). When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Hazen Paper Co.* v. *Biggins*, 507 U. S. 604, 610 (1993). That is, the plaintiff's age must have "actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome." *Ibid.* Recognizing that "the question facing triers of fact in discrimination cases is both sensitive and difficult," and that "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes," *Postal Service Bd. of Governors* v. *Aikens*, 460 U. S. 711, 716 (1983), the Courts of Appeals, including the Fifth Circuit in this case, have employed some variant of the framework articulated in *McDonnell Douglas* to analyze ADEA claims that are based principally on circumstantial evidence. See, *e. g.*, *Stokes* v. *Westinghouse Savannah River Co.*, 206 F. 3d 420, 429 (CA4 2000); *Galabya* v. *New York City Bd. of Ed.*, 202 F. 3d 636, 639 (CA2 2000); *Hall* v. *Giant Food, Inc.*, 175 F. 3d 1074, 1077–1078 (CADC 1999); *Beaird* v. *Seagate Technology Inc.*, 145 F. 3d 1159, 1165 (CA10), cert. denied, 525 U. S. 1054 (1998); *Hindman* v. *Transkrit Corp.*, 145 F. 3d 986, 990–991 (CA8 1998); *Turlington* v. *Atlanta Gas Light Co.*, 135 F. 3d 1428, 1432 (CA11), cert. denied, 525 U. S. 962 (1998); *Keller* v. *Orix Credit Alliance, Inc.*, 130 F. 3d 1101, 1108 (CA3 1997) (en banc); *Kaniff* v. *Allstate Ins. Co.*, 121 F. 3d 258, 263 (CA7 1997); *Ritter* v. *Hughes Aircraft Co.*, 58 F. 3d 454, 456–457 (CA9 1995); *Bodenheimer* v. *PPG Industries, Inc.*, 5 F. 3d

955, 957 (CA5 1993); *Mesnick* v. *General Elec. Co.*, 950 F. 2d 816, 823 (CA1 1991), cert. denied, 504 U. S. 985 (1992); *Ackerman* v. *Diamond Shamrock Corp.*, 670 F. 2d 66, 69 (CA6 1982). This Court has not squarely addressed whether the *McDonnell Douglas* framework, developed to assess claims brought under § 703(a)(1) of Title VII of the Civil Rights Act of 1964, 78 Stat. 255, 42 U. S. C. § 2000e–2(a)(1), also applies to ADEA actions. Because the parties do not dispute the issue, we shall assume, *arguendo*, that the *McDonnell Douglas* framework is fully applicable here. Cf. *O'Connor* v. *Consolidated Coin Caterers Corp.*, 517 U. S. 308, 311 (1996).

*McDonnell Douglas* and subsequent decisions have "established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases." *St. Mary's Honor Center* v. *Hicks*, 509 U. S. 502, 506 (1993). First, the plaintiff must establish a prima facie case of discrimination. *Ibid.; Texas Dept. of Community Affairs* v. *Burdine*, 450 U. S. 248, 252–253 (1981). It is undisputed that petitioner satisfied this burden here: (i) at the time he was fired, he was a member of the class protected by the ADEA ("individuals who are at least 40 years of age," 29 U. S. C. § 631(a)), (ii) he was otherwise qualified for the position of Hinge Room supervisor, (iii) he was discharged by respondent, and (iv) respondent successively hired three persons in their thirties to fill petitioner's position. See 197 F. 3d, at 691–692. The burden therefore shifted to respondent to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine, supra*, at 254. This burden is one of production, not persuasion; it "can involve no credibility assessment." *St. Mary's Honor Center, supra*, at 509. Respondent met this burden by offering admissible evidence sufficient for the trier of fact to conclude that petitioner was fired because of his failure to maintain accurate attendance records. See 197 F. 3d, at 692. Accordingly, "the *McDonnell Douglas* framework—with

its presumptions and burdens"—disappeared, *St. Mary's Honor Center, supra,* at 510, and the sole remaining issue was "discrimination *vel non,*" *Aikens, supra,* at 714.

Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U. S., at 253. And in attempting to satisfy this burden, the plaintiff—once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision—must be afforded the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Ibid.;* see also *St. Mary's Honor Center, supra,* at 507–508. That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination "by showing that the employer's proffered explanation is unworthy of credence." *Burdine, supra,* at 256. Moreover, although the presumption of discrimination "drops out of the picture" once the defendant meets its burden of production, *St. Mary's Honor Center, supra,* at 511, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case "and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual," *Burdine, supra,* at 255, n. 10.

In this case, the evidence supporting respondent's explanation for petitioner's discharge consisted primarily of testimony by Chesnut and Sanderson and documentation of petitioner's alleged "shoddy record keeping." 197 F. 3d, at 692. Chesnut testified that a 1993 audit of Hinge Room operations revealed "a very lax assembly line" where employees were not adhering to general work rules. 4 Record 197–199. As a result of that audit, petitioner was placed on 90 days' probation for unsatisfactory performance. 197 F. 3d, at 690. In 1995, Chesnut ordered another investi-

gation of the Hinge Room, which, according to his testimony, revealed that petitioner was not correctly recording the absences and hours of employees. 4 Record 204–205. Respondent introduced summaries of that investigation documenting several attendance violations by 12 employees under petitioner's supervision, and noting that each should have been disciplined in some manner. See App. 21–24, 30–37; 4 Record 206–208. Chesnut testified that this failure to discipline absent and late employees is "extremely important when you are dealing with a union" because uneven enforcement across departments would keep the company "in grievance and arbitration cases, which are costly, all the time." 4 *id.*, at 206. He and Sanderson also stated that petitioner's errors, by failing to adjust for hours not worked, cost the company overpaid wages. 3 *id.*, at 100, 142, 154; 4 *id.*, at 191–192, 213. Sanderson testified that she accepted the recommendation to discharge petitioner because he had "intentionally falsif[ied] company pay records." 3 *id.*, at 100.

Petitioner, however, made a substantial showing that respondent's explanation was false. First, petitioner offered evidence that he had properly maintained the attendance records. Most of the timekeeping errors cited by respondent involved employees who were not marked late but who were recorded as having arrived at the plant at 7 a.m. for the 7 a.m. shift. 3 *id.*, at 118–123; 4 *id.*, at 240–247, 283–285, 291, 293–294. Respondent contended that employees arriving at 7 a.m. could not have been at their workstations by 7 a.m., and therefore must have been late. 3 *id.*, at 119–120; 4 *id.*, at 241, 245. But both petitioner and Oswalt testified that the company's automated timeclock often failed to scan employees' timecards, so that the timesheets would not record any time of arrival. 3 *id.*, at 6, 85; 4 *id.*, at 334–335. On these occasions, petitioner and Oswalt would visually check the workstations and record whether the employees were present at the start of the shift. 3 *id.*, at 6, 85–87;

4 *id.*, at 335. They stated that if an employee arrived promptly but the timesheet contained no time of arrival, they would reconcile the two by marking "7 a.m." as the employee's arrival time, even if the employee actually arrived at the plant earlier. *Ibid.* On cross-examination, Chesnut acknowledged that the timeclock sometimes malfunctioned, and that if "people were there at their work station[s]" at the start of the shift, the supervisor "would write in seven o'clock." 4 *id.*, at 244. Petitioner also testified that when employees arrived before or stayed after their shifts, he would assign them additional work so they would not be overpaid. See 197 F. 3d, at 693.

Petitioner similarly cast doubt on whether he was responsible for any failure to discipline late and absent employees. Petitioner testified that his job only included reviewing the daily and weekly attendance reports, and that disciplinary writeups were based on the monthly reports, which were reviewed by Caldwell. 3 Record 20–22; 4 *id.*, at 335. Sanderson admitted that Caldwell, and not petitioner, was responsible for citing employees for violations of the company's attendance policy. 3 *id.*, at 20–21, 137–138. Further, Chesnut conceded that there had never been a union grievance or employee complaint arising from petitioner's recordkeeping, and that the company had never calculated the amount of overpayments allegedly attributable to petitioner's errors. 4 *id.*, at 267, 301. Petitioner also testified that, on the day he was fired, Chesnut said that his discharge was due to his failure to report as absent one employee, Gina Mae Coley, on two days in September 1995. 3 *id.*, at 23, 70; 4 *id.*, at 335–336. But petitioner explained that he had spent those days in the hospital, and that Caldwell was therefore responsible for any overpayment of Coley. 3 *id.*, at 17, 22. Finally, petitioner stated that on previous occasions that employees were paid for hours they had not worked, the company had simply adjusted those employees' next paychecks to correct the errors. 3 *id.*, at 72–73.

Based on this evidence, the Court of Appeals concluded that petitioner "very well may be correct" that "a reasonable jury could have found that [respondent's] explanation for its employment decision was pretextual." 197 F. 3d, at 693. Nonetheless, the court held that this showing, standing alone, was insufficient to sustain the jury's finding of liability: "We must, as an essential final step, determine whether Reeves presented sufficient evidence that his age motivated [respondent's] employment decision." *Ibid.* And in making this determination, the Court of Appeals ignored the evidence supporting petitioner's prima facie case and challenging respondent's explanation for its decision. See *id.*, at 693–694. The court confined its review of evidence favoring petitioner to that evidence showing that Chesnut had directed derogatory, age-based comments at petitioner, and that Chesnut had singled out petitioner for harsher treatment than younger employees. See *ibid.* It is therefore apparent that the court believed that only this additional evidence of discrimination was relevant to whether the jury's verdict should stand. That is, the Court of Appeals proceeded from the assumption that a prima facie case of discrimination, combined with sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory reason for its decision, is insufficient as a matter of law to sustain a jury's finding of intentional discrimination.

In so reasoning, the Court of Appeals misconceived the evidentiary burden borne by plaintiffs who attempt to prove intentional discrimination through indirect evidence. This much is evident from our decision in *St. Mary's Honor Center.* There we held that the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel* judgment for the plaintiff. 509 U. S., at 511. The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's prof-

fered reason . . . is correct." *Id.*, at 524. In other words, "[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.*, at 519.

In reaching this conclusion, however, we reasoned that it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. Specifically, we stated:

> "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination." *Id.*, at 511.

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. See *id.*, at 517 ("[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination"). In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." *Wright* v. *West*, 505 U. S. 277, 296 (1992); see also *Wilson* v. *United States*, 162 U. S. 613, 620–621 (1896); 2 J. Wigmore, Evidence § 278(2), p. 133 (J. Chadbourn rev. 1979). Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Cf. *Furnco Constr. Corp.* v.

*Waters*, 438 U. S. 567, 577 (1978) ("[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts with *some* reason, based his decision on an impermissible consideration"). Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. See *Aka* v. *Washington Hospital Center*, 156 F. 3d, at 1291–1292; see also *Fisher* v. *Vassar College*, 114 F. 3d, at 1338 ("[I]f the circumstances show that the defendant gave the false explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent"). To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50, and we have reiterated that trial courts should not "'treat discrimination differently from other ultimate questions of fact.'" *St. Mary's Honor Center, supra*, at 524 (quoting *Aikens*, 460 U. S., at 716).

Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie

case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law. See *infra*, at 151–152. For purposes of this case, we need not—and could not—resolve all of the circumstances in which such factors would entitle an employer to judgment as a matter of law. It suffices to say that, because a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability, the Court of Appeals erred in proceeding from the premise that a plaintiff must always introduce additional, independent evidence of discrimination.

### III

#### A

The remaining question is whether, despite the Court of Appeals' misconception of petitioner's evidentiary burden, respondent was nonetheless entitled to judgment as a matter of law. Under Rule 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. Rule Civ. Proc. 50(a); see also *Weisgram* v. *Marley Co.*, 528 U. S. 440, 447–448 (2000). The Courts of Appeals have articulated differing formulations as to what evidence a court is to consider in ruling on a Rule 50 motion. See *Venture Technology, Inc.* v. *National Fuel Gas Distribution Corp.*, decided with *Schwimmer* v. *Sony Corp. of America*, 459 U. S. 1007, 1009 (1982) (White, J., dissenting from denial of certiorari). Some decisions have stated that review is limited to that evidence favorable to the nonmoving party, see, *e. g.*, *Aparicio* v. *Norfolk & Western R. Co.*, 84 F. 3d 803, 807 (CA6 1996); *Simpson* v. *Skelly Oil Co.*, 371 F. 2d 563, 566 (CA8 1967), while most have held that review extends to the entire record, drawing all reasonable inferences in favor of the nonmovant, see, *e. g.*, *Tate* v. *Government Employees Ins. Co.*,

997 F. 2d 1433, 1436 (CA11 1993); *Boeing Co.* v. *Shipman,* 411 F. 2d 365, 374 (CA5 1969) (en banc).

On closer examination, this conflict seems more semantic than real. Those decisions holding that review under Rule 50 should be limited to evidence favorable to the nonmovant appear to have their genesis in *Wilkerson* v. *McCarthy,* 336 U. S. 53 (1949). See 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, pp. 297–301 (2d ed. 1995) (hereinafter Wright & Miller). In *Wilkerson,* we stated that "in passing upon whether there is sufficient evidence to submit an issue to the jury we need look only to the evidence and reasonable inferences which tend to support the case of" the nonmoving party. 336 U. S., at 57. But subsequent decisions have clarified that this passage was referring to the evidence to which the trial court should *give credence,* not the evidence that the court should *review.* In the analogous context of summary judgment under Rule 56, we have stated that the court must review the record "taken as a whole." *Matsushita Elec. Industrial Co.* v. *Zenith Radio Corp.,* 475 U. S. 574, 587 (1986). And the standard for granting summary judgment "mirrors" the standard for judgment as a matter of law, such that "the inquiry under each is the same." *Anderson* v. *Liberty Lobby, Inc.,* 477 U. S. 242, 250–251 (1986); see also *Celotex Corp.* v. *Catrett,* 477 U. S. 317, 323 (1986). It therefore follows that, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record.

In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Lytle* v. *Household Mfg., Inc.,* 494 U. S. 545, 554–555 (1990); *Liberty Lobby, Inc., supra,* at 254; *Continental Ore Co.* v. *Union Carbide & Carbon Corp.,* 370 U. S. 690, 696, n. 6 (1962). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Liberty*

*Lobby, supra,* at 255.  Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.  See Wright & Miller 299.  That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.,* at 300.

## B

Applying this standard here, it is apparent that respondent was not entitled to judgment as a matter of law.  In this case, in addition to establishing a prima facie case of discrimination and creating a jury issue as to the falsity of the employer's explanation, petitioner introduced additional evidence that Chesnut was motivated by age-based animus and was principally responsible for petitioner's firing.  Petitioner testified that Chesnut had told him that he "was so old [he] must have come over on the Mayflower" and, on one occasion when petitioner was having difficulty starting a machine, that he "was too damn old to do [his] job." 3 Record 26.  According to petitioner, Chesnut would regularly "cuss at me and shake his finger in my face."  3 *id.,* at 26–27.  Oswalt, roughly 24 years younger than petitioner, corroborated that there was an "obvious difference" in how Chesnut treated them.  3 *id.,* at 82.  He stated that, although he and Chesnut "had [their] differences," "it was nothing compared to the way [Chesnut] treated Roger." *Ibid.*  Oswalt explained that Chesnut "tolerated quite a bit" from him even though he "defied" Chesnut "quite often," but that Chesnut treated petitioner "[i]n a manner, as you would . . . treat . . . a child when . . . you're angry with [him]." 3 *id.,* at 82–83.  Petitioner also demonstrated that, according to company records, he and Oswalt had nearly identical rates of productivity in 1993.  3 *id.,* at 163–167; 4 *id.,* at 225–226. Yet respondent conducted an efficiency study of only the

regular line, supervised by petitioner, and placed only petitioner on probation. 3 *id.*, at 166–167; 4 *id.*, at 229. Chesnut conducted that efficiency study and, after having testified to the contrary on direct examination, acknowledged on cross-examination that he had recommended that petitioner be placed on probation following the study. 4 *id.*, at 197–199, 237.

Further, petitioner introduced evidence that Chesnut was the actual decisionmaker behind his firing. Chesnut was married to Sanderson, who made the formal decision to discharge petitioner. 3 *id.*, at 90, 152. Although Sanderson testified that she fired petitioner because he had "intentionally falsif[ied] company pay records," 3 *id.*, at 100, respondent only introduced evidence concerning the inaccuracy of the records, not their falsification. A 1994 letter authored by Chesnut indicated that he berated other company directors, who were supposedly his coequals, about how to do their jobs. Pl. Exh. 7, 3 Record 108–112. Moreover, Oswalt testified that all of respondent's employees feared Chesnut, and that Chesnut had exercised "absolute power" within the company for "[a]s long as [he] can remember." 3 *id.*, at 80.

In holding that the record contained insufficient evidence to sustain the jury's verdict, the Court of Appeals misapplied the standard of review dictated by Rule 50. Again, the court disregarded critical evidence favorable to petitioner— namely, the evidence supporting petitioner's prima facie case and undermining respondent's nondiscriminatory explanation. See 197 F. 3d, at 693–694. The court also failed to draw all reasonable inferences in favor of petitioner. For instance, while acknowledging "the potentially damning nature" of Chesnut's age-related comments, the court discounted them on the ground that they "were not made in the direct context of Reeves's termination." *Id.*, at 693. And the court discredited petitioner's evidence that Chesnut was the actual decisionmaker by giving weight to the fact that

there was "no evidence to suggest that any of the other decision makers were motivated by age." *Id.*, at 694. Moreover, the other evidence on which the court relied—that Caldwell and Oswalt were also cited for poor recordkeeping, and that respondent employed many managers over age 50—although relevant, is certainly not dispositive. See *Furnco*, 438 U. S., at 580 (evidence that employer's work force was racially balanced, while "not wholly irrelevant," was not "sufficient to *conclusively* demonstrate that [the employer's] actions were not discriminatorily motivated"). In concluding that these circumstances so overwhelmed the evidence favoring petitioner that no rational trier of fact could have found that petitioner was fired because of his age, the Court of Appeals impermissibly substituted its judgment concerning the weight of the evidence for the jury's.

The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination. Given the evidence in the record supporting petitioner, we see no reason to subject the parties to an additional round of litigation before the Court of Appeals rather than to resolve the matter here. The District Court plainly informed the jury that petitioner was required to show "by a preponderance of the evidence that his age was a determining and motivating factor in the decision of [respondent] to terminate him." Tr. 7 (Jury Charge) (Sept. 12, 1997). The court instructed the jury that, to show that respondent's explanation was a pretext for discrimination, petitioner had to demonstrate "1, that the stated reasons were not the real reasons for [petitioner's] discharge; *and* 2, that age discrimination was the real reason for [petitioner's] discharge." *Ibid.* (emphasis added). Given that petitioner established a prima facie case of discrimination, introduced enough evidence for the jury to reject respondent's explanation, and produced additional evidence of age-based animus, there was sufficient evidence for the jury to find that respondent had

intentionally discriminated. The District Court was therefore correct to submit the case to the jury, and the Court of Appeals erred in overturning its verdict.

For these reasons, the judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE GINSBURG, concurring.

The Court today holds that an employment discrimination plaintiff *may* survive judgment as a matter of law by submitting two categories of evidence: first, evidence establishing a "prima facie case," as that term is used in *McDonnell Douglas Corp.* v. *Green,* 411 U. S. 792, 802 (1973); and second, evidence from which a rational factfinder could conclude that the employer's proffered explanation for its actions was false. Because the Court of Appeals in this case plainly, and erroneously, required the plaintiff to offer some evidence beyond those two categories, no broader holding is necessary to support reversal.

I write separately to note that it may be incumbent on the Court, in an appropriate case, to define more precisely the circumstances in which plaintiffs will be required to submit evidence beyond these two categories in order to survive a motion for judgment as a matter of law. I anticipate that such circumstances will be uncommon. As the Court notes, it is a principle of evidence law that the jury is entitled to treat a party's dishonesty about a material fact as evidence of culpability. *Ante,* at 147. Under this commonsense principle, evidence suggesting that a defendant accused of illegal discrimination has chosen to give a false explanation for its actions gives rise to a rational inference that the defendant could be masking its actual, illegal motivation. *Ibid.* Whether the defendant was in fact motivated by discrimination is of course for the finder of fact to decide; that is the lesson of *St. Mary's Honor Center* v. *Hicks,* 509 U. S. 502 (1993). But the inference remains—unless it is conclusively

demonstrated, by evidence the district court is required to credit on a motion for judgment as a matter of law, see *ante*, at 151, that discrimination could not have been the defendant's true motivation. If such conclusive demonstrations are (as I suspect) atypical, it follows that the ultimate question of liability ordinarily should not be taken from the jury once the plaintiff has introduced the two categories of evidence described above. Because the Court's opinion leaves room for such further elaboration in an appropriate case, I join it in full.