NIEMEYER, Circuit Judge,
dissenting:
It appears to me, regretfully, that the majority may have permitted the plaintiffs personal suspicions, coupled with Sears’ clumsiness in giving its reasons for not hiring plaintiff, to become the prima facie case for national origin discrimination. The evidence to support national origin as a reason for not hiring the plaintiff is completely lacking. Indeed, because there is no more indication that the plaintiff was a victim of discrimination on the basis of national origin than there is that he was a victim of age discrimination or gender discrimination, the majority is incorrect in holding that a rational factfinder could conclude that Sears’ decision not to hire Santana was based on national origin discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000).
Human resources specialist, Patty Haynes, first interviewed Francisco Santana, the plaintiff, in October 1996 for a position at the Morehead City (North Carolina) Sears store and, during the interview, noted Santana’s accent, asking him where he was originally from. He said that he had been born in Mexico City. After the interview, Haynes offered Santana a job, albeit not the one he had originally applied for in late 1995. When he indicated that he was interested in a “loss prevention” position, as he had previously held at the Sears store in California, Haynes realized that Santana was “the guy from California” who had been an applicant since late in the previous year. Haynes took Santana to the store’s operations manager, Teri Katsekes, and Kat-sekes offered Santana a part-time loss prevention position.
*858 Later, however, Sears abandoned its offer to Santana on the instruction of Patricia Kiely, the store manager. When Kiely was told by an employee that Katsekes “was getting ready to hire a guy from California with asset protection experience,” Kiely told the employee she “did not want that to happen,” but she did not explain why. Kiely had never met the applicant, nor did she know his name or national origin. She simply overruled Kat-sekes, stating, “we’re not going to go any further with this application.” When Kat-sekes was advised of Kiely’s decision, she became angry that she had been overruled.
As Kiely later explained, she had been told by a Sears regional manager several months earlier — during a period when Santana had been first prosecuting his application — about an unnamed “asset protection agent from California” who had “some sexual harassment issues.” While Kiely recalls the conversation well and relied on it, the regional manager later confirmed a more limited recollection. The regional manager stated that early in 1996, a loss prevention agent from a California store, who had been accused of sexual harassment, was looking for work in the southeast and that she could “very well” have talked with Kiely about this agent. Kiely acknowledged that in October 1996 when Santana interviewed, she did not check whether Santana was this person; rather, she simply ended the interview process with Santana because she thought he might be the individual about whom she had heard earlier from the regional manager. Perhaps Kiely acted too cautiously or too abruptly. But there is nothing in the record to suggest that Kiely acted by reason of Santana’s national origin. Indeed, when she interrupted the interview process, she did not know Santana’s name or his national origin.
Not only is there a total lack of evidence in this case to support a motive based on national origin, there is also evidence that the Morehead Sears store did not discriminate by reason of national origin and was prepared to hire Hispanics. First, both Haynes and Katsekes had offered Santana a job. They had the authority to do so and obviously did not discriminate on the basis of Santana’s national origin in doing so. Second, during this same period, Sears had hired other Hispanics in the store for various positions.
WThile it is true that various Sears employees were hesitant during discovery, indeed even inconsistent, in giving their reasons for not hiring Santana, at bottom it is apparent that the decision not to hire Santana occurred solely because of Kiely’s intervention. And the only evidence about why Kiely made the decision to intervene was in response to information she had received about a California Sears employee, who was looking for a job in the southeast and who had “sexual harassment issues.” While this information may not have been sufficient, without further investigation, to veto an employee’s application, there is no evidence to suggest that Kiely was motivated by Santana’s national origin. Accordingly, I do not believe that a question of fact has been created simply by Santana’s personal belief that discrimination based on his national origin must have been the reason for his not receiving the Morehead City store job. See Reeves, 120 S.Ct. at 2108. Accordingly, I would affirm the summary judgment entered by the district court.