GREGORY, Circuit Judge,
dissenting:
The majority’s opinion invites us to overlook the Government’s incredible deviation from its own regulations and procedures and the Appellant’s evidence that this deviation was racially motivated. Because I believe that Mr. Moore’s preselection theory of pretext has significantly more merit than the majority accords it, I must respectfully dissent.
I.
The Government has a minimal burden to rebut a Title VII plaintiffs prima facie case under the McDonnell Douglas burden-shifting scheme.[1] Thus, I will assume here that the Government’s explanation that Roberts was better qualified suffices as a legitimate, nondiscriminatory reason. But, even once the McDonnell Douglas presumption has dropped from the case, we must still deal with Moore’s contention that the only reason that Roberts was more qualified than other applicants was that she was allowed to remain in the Acting Chief position for months beyond the 120 days specified in the federal regulations. The majority dismisses this theory of pretext, suggesting that Moore’s “argument actually supports the Government’s assertion that McCrary promoted Roberts because she was better qualified than him due, in part, to the experience she gained during her temporary promotion,” supra. The majority, it seems, sees nothing wrong with the fact that the very advantages that Roberts had in the bid for the Unit Chief position were advantages that she had gained in apparent violation of federal regulations.
Office of Personnel Management regulations specify that competitive procedures must be used for all details “for more than 120 days to a higher grade position or to a position with higher promotion potential.” 5 C.F.R. § 335.103(c)(ii) (2008). The DEA’s own personnel manual echoes this language. (See J.A. 854 (“Temporary assignments (details) to higher-graded positions or to positions with promotion potential for more than 120 days must be made under competitive promotion procedures.”).) The Government suggests that it complied with these regulations by terminating Roberts’ salary increase as Acting Chief after 120 days. But the regulations are not concerned with the length of non-competitive details simply because of the pay increases that accompany them. The regulations make clear that competitive procedures are needed to select longer-term detailees to both higher-graded *119 positions and positions with “higher promotion potential.” 5 C.F.R. § 335.103(e)(ii) (2008). Thus it is the increase in pay and the increased opportunity for promotion that prompted OPM to mandate that competitive procedures be used for long-term details. In other words, the regulations anticipate and seek to avoid just the outcome that we find in this case — a situation where a detailee who was not competitively selected is allowed to stay past 120 days, albeit at her normal salary, in a position that she is essentially being groomed to assume permanently.
While the Government has suggested that there was some need to maintain continuity and to reduce turmoil while the unit was going through a reorganization, these assertions, without more, cannot justify leaving Roberts as Acting Chief for eleven months — almost three times the length allowed under the regulations. Roberts’ extra time in the Acting Chief position undoubtedly advantaged her unfairly in the promotion process. It was in these months as Acting Chief that Roberts “demonstrated [the] managerial potential” that qualified her for the Unit Chief position. (J.A. 229.) Several members of the evaluation panel that interviewed her were fellow unit chiefs, with whom she met routinely for management meetings. During her time as Acting Chief, Roberts also had access to valuable leadership training opportunities that Moore and other applicants did not have.
McCrary was clearly aware that others had interest in being rotated into the Acting Chief position. Moore himself had informed McCrary that it was unfair not to
allow others to serve in that capacity, to which McCrary’s only response was, “Life isn’t fair.” (J.A. 651, 788.) This kind of insensitive and provocative response belies the Government’s contention that Roberts was kept on as Acting in order to reduce turmoil in the unit.
Of course, preselection, however unfair it may be, does not by itself suffice to prove racial discrimination. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 271 (4th Cir.2005). But I disagree with the majority’s contention that “there is no evidence that McCrary preselected Roberts on the basis of race or gender,” supra. Moore alleges in both his EEO affidavit and in his deposition testimony that, in the last twenty years, no African-Americans have been promoted above the GS-13 level in the DEA’s Systems Applications Section.[2] (See J.A. 792, 670.) These statements remain uncontroverted on the record before us. Moreover, of the six intra-agency candidates listed on the BQL for the Chief position, four of them — Moore, Terry Ford, Evelyn Kelley, and Doi’retha Tumlin — were AfrieanAmeriean.[3] Without the experience she gained as a result of improperly being kept on as Acting Chief beyond the 120-day limit, Roberts may well have not been qualified, or at least not better qualified than others, for the permanent position. Thus, the evidence permits an inference that McCrary, as Moore himself puts it, “knew there was a reasonable chance than an African-American would be Unit Chief, unless he made Roberts equally qualified by giving her the opportunity to gain experience, so *120 that he could select her.”[4] (Appellant’s Br. at 20.)
Based on this evidence, a jury could very well find that McCrary preselected Roberts for the Unit Chief position and that her preselection was racially motivated. As the Supreme Court noted in St. Mary’s Honor Center v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993),
The factfinder’s disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant’s proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, and ... no additional proof of discrimination is required.
(internal citation and quotations omitted) (emphasis in original); accord Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); Anderson, 406 F.3d at 269 (4th Cir.2005).
II.
There is sufficient evidence under Moore’s preselection theory to establish that the “legitimate, nondiscriminatory reason” that the Government proffered for promoting Roberts was pretext for racial discrimination, and I would, accordingly, reverse the district court’s entry of summary judgment in favor of the Government. Thus, I dissent.

. The majority's opinion assumes without deciding that Moore has established his prima facie case. In fact, Moore's prima facie burden is easily met because (1) he is a member of a protected class; (2) he applied for the SISE Unit Chief position; (3) he was qualified for that position, as evidenced by his placement on the BQL; and (4) he was rejected from that position under circumstances giving rise to an inference of discrimination. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir.2005). This last element can be satisfied by demonstrating that the position was filled by a similarly qualified applicant outside the protected class, Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir.2004) (en banc), and, in this case, the position was filled by Roberts, a Caucasian woman.

. Moore himself was promoted to a GS-13 in 1989, and he was never promoted again before his retirement in 2004.

. I will exclude Mark Kirksey from this analysis since he applied from outside DEA and would not have factored into McCrary’s calcuius of the odds of an African-American applicant being selected for the Unit Chief position at the time McCrary decided to keep Roberts on as Acting beyond the 120-day limit.

. It is worth noting that McCrary himself regarded Tumlin as the next most qualified for the job, and that Roberts and Tumlin tied for first in the rankings of the evaluation panel.