JAMES L. DENNIS, Circuit Judge,
concurring in part, dissenting in part:
I concur in the majority’s decision that plaintiff-appellant Gregory Willis should proceed to trial on his claim that the disciplinary warning constituted illegal retaliation. The heart of this retaliation-and-race-discrimination case, however, is not the disciplinary warning, which is alleged to have been a mere stepping stone, but is rather the later termination of Willis’s employment in Cleco Corporation’s human resources department. According to Willis and his supporting evidence in the record, he reported to Cleco corporate executives that he overheard a racist conversation between the head of his department, John Melancon, and another coworker about the company’s hiring practices and whether the company should recruit African-American employees. After he learned that Willis reported him for participating in the racist conversation, Melancon told a colleague that he was “very pissed,” that he was “not going to forget” Willis’s slight, and that he had decided to “terminate that nigger.” Over the next two years, allegedly for other reasons, Willis was disciplined, given a poor performance review, and, finally, fired. On the day he was fired, Willis says that Melancon came to his home to deliver the news and added, “Boy, you will keep your mouth shut now.” This and additional evidence adduced by Willis, as outlined below, conflicts with the employer’s reasons for the discharge and raises genuine issues as to what motivated the discharge, making summary judgment for the employer inappropriate based on the record in this case. The evidence that Willis’s discharge was motivated by retaliation and, at least in part, by racial discrimination is too strong and pervasive to ignore or compartmentalize. I respectfully dissent from the denial of these claims.
I.
To survive Cleco Corporation’s motions for summary judgment on his retaliation and race discrimination claims, Willis must establish that there is a genuine issue of material fact.[1] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An examination of Willis’s evidence submitted in opposition to Cleco Corporation’s motions reveals that there can be little question that Willis has carried his burden. Willis’s evidence, with supporting citations to the record on appeal, is as follows.
*322 A.
Willis, who is African-American, started working in Cleco Corporation’s human resources department in 2000.[2] Several years later, he was promoted to the position of senior human resources representative.[3] From 2005 until his termination in 2009, his direct supervisor was Ed Taylor, manager of human resources.[4] Taylor, in turn, reported to John Melancon, general manager of human resources.[5]
Over their years working at the company, Willis and two of his coworkers, Jerome C. Ardoin, Jr. and Patrick Lacour, claim to have overheard statements by Taylor and Melancon that were charged with racism:

Melancon

• According to Ardoin, who is white and who worked with Melancon for over two decades, Melancon referred to African-Americans as “niggers” and “coons” on “numerous occasions.”[6]
• According to Lacour, who is white, Melancon once told him that he refused to allow his family to live in Alexandria, Louisiana because “there are too many black people who live over there.”[7]

Taylor

• According to Willis, Taylor referred to African-Americans sometimes as “colored people.”[8]
• According to Willis, Taylor told him on several occasions that the first time he saw an African-American man, he thought the man “looked like a gorilla.” [9]
B.
Willis alleges that, on March 2, 2007, he overheard a conversation between Melan-con and Robyn Cooper, a corporate communications representative.[10] Willis says that he overheard Cooper ask Melancon, in reference to a company recruitment trip, “Why are you all going to Grambling State University?”[11] Grambling State University is a historically black institution. Willis says that Cooper continued:
As you are aware, those students are dumb. They are no different than the dumb and lazy blacks that work at this company. If you don’t hire any of them, what are they going to do? Are they going to go to the NAACP? [12]
Melancon remained silent while Cooper was speaking, which Willis interpreted to mean that Melancon was a “willing audience.” [13]
*323 Willis says that he was troubled by the fact that Melancon, the general manager of human resources, had listened to such sentiments about the company’s recruitment practices without taking exception.[14] Willis reported the conversation to Jeff Hall, the company’s chief diversity officer, and George Bausewine, the senior vice president of corporate services.[15] He drafted and gave a memorandum describing the conversation to Bausewine.[16]
According to Willis, during the following months of spring of 2007, his relationship with Melancon broke down severely.[17] Melancon was furious and stopped speaking to him for months.[18] Coworkers advised Willis to try to “build a bridge” with Melancon, but Willis was “uncomfortable” doing so because Melancon had started making “derogatory” comments about him around the office.[19] Willis says that he sought advice from Taylor about his difficulties with Melancon and that Taylor told him, “You should not have reported John [Melancon].”[20] Taylor continued, ‘You wouldn’t have these problems you’re having right now.”[21] Taylor’s only advice, Willis says, was to try to work things out with Melancon.[22]
Willis says that he retrieved the memorandum he had sent to Bausewine describing the conversation about the trip to Grambling and he brought it into Melan-con’s office, set it on the table, and said that he wanted to talk about it.[23] According to Willis, Melancon ordered him to close the office door.[24] Then, Melancon slammed his hand on the table and declared, “You tried to burn my ass and I am not going to forget that.”[25] Willis responded, “Look, I did not report you. My memo said, she [i.e., Cooper] was making the comments and you were her audience.” [26] This did not assuage Melancon’s anger.[27]
Around this same time, Ardoin claims that Melancon told him that he was “very pissed” with Willis for reporting his conversation with Cooper about the Gram-bling recruitment trip and that, “If we have to create a reason, Ed [Taylor] and I have decided — we are going to terminate that nigger Greg Willis for reporting me.”[28]
C.
On March 15, 2007, Willis sent an email to twenty-four coworkers saying that the son of a colleague, James Eli, overdosed on “thirty one pills.”[29] Willis’s email asked *324 the coworkers to pray for Eli’s son.[30] According to Willis, Eli asked him to send the email to his friends at the company.[31] But, on April 16, 2007, Taylor and Melan-con issued a disciplinary warning to Willis, stating that Willis’s email caused Eli and his wife “considerable pain and distress” and that Willis was “advised to use better judgment,” and a failure to do so “could result in further disciplinary action including suspension or termination.”[32]
D.
On August 15, 2007, Taylor put Willis on a work improvement plan, citing his purportedly poor job performance.[33] According to Willis, as a result of the improvement plan, he was unlikely to receive a salary increase that year.[34] Willis says that Taylor told him that the improvement plan was necessary because Willis “caused morale problems” at the company when he reported the conversation about the Gram-bling recruitment trip between Cooper and Melancon.[35] Willis says that Taylor told him, “Cooper is upset.”[36]
E.
During late 2008 and early 2009, a series of events culminated in the termination of Willis’s employment. In 2008, Willis helped Franklin Sylvia obtain a job at the company.[37] Sylvia says that he called Willis, on Willis’s cell phone, on January 21, 2009 to discuss issues involving workplace rumors about whether Sylvia had, as some believed, reported a coworker for sleeping during a training class.[38] According to Sylvia, during that conversation, Willis veered off topic and lectured Sylvia about his racial heritage (Sylvia has one black parent and one white parent), telling him generally that he should not be ashamed of his African-American roots, that he should not reject who he is, and that he should spend more time with black coworkers.[39]
Sylvia says that he was troubled by the conversation, which he considered inappropriate “race instruction,” and feared that it may have implications for his future employment at Cleco given Willis’s position in the human resources department and the influential role Willis played in his hiring.[40] Sylvia reported the conversation to Taylor, prompting an investigation.[41] The investigation was carried out by Taylor and Me-lancon, who worked together closely.[42] On February 2, 2009, Taylor and Melancon summoned Willis into Melaneon’s office and confronted him about Sylvia’s allegations of an inappropriate phone conversation.[43] At the meeting, Willis denied that the alleged call ever happened.[44] The next day, Taylor and Melancon met with Sylvia and confirmed that Sylvia’s cell phone *325 showed a record of a call between Sylvia’s and Willis’s cell phones on January 21, the day the alleged inappropriate conversation occurred.[45] Willis, however, continued to deny that the call ever occurred.[46] Taylor and Melancon decided to credit Sylvia’s allegations over Willis’s denials.[47]
On February 4, 2009, Willis was fired purportedly for the inappropriate phone conversation and for lying about his involvement in it.[48] Willis says that Taylor and Melancon came to his home to deliver the news and that, after Melancon told him that he was fired, Melancon said, “Boy, you will keep your mouth shut now.”[49]
II.
Under Title VII of the Civil Rights Act of 1964, it is illegal for an employer to discharge an employee or otherwise discriminate against him with respect to the terms, conditions, or privileges of employment because of race. 42 U.S.C. § 2000e-2. It is also illegal for an employer to retaliate against an employee for objecting to illegal workplace discrimination. Id. § 2000e-3. In this lawsuit, Willis claims that Cleco Corporation, through Taylor and Melancon, his supervisors in the human resources department, did both.
The question before the court on summary judgment is whether Willis has put forth sufficient evidence to create a genuine dispute as to whether Cleco Corporation discriminated against him on the basis of race or retaliated against him for objecting to race discrimination at the company. In considering the evidence in the record, this court must draw all reasonable inferences in favor of Willis, the non-moving party, and may not make credibility determinations or weigh the evidence. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).
Willis’s, Lacour’s, and Ardoin’s testimony, drawing all reasonable inferences therefrom, establishes that Willis’s boss, Melancon, often referred to African-Americans as “niggers” and “coons.” Willis overheard and reported a racist conversation about company hiring policies between Melancon and another. Melancon was furious. He told Willis that he would “not forget” Willis’s slight. He told Ardoin that he had decided “to terminate that nigger.” [50] Weeks later, Willis was disciplined for sending an email involving private matters of a colleague (Eli’s son’s overdose) that Willis believed he was authorized to send. A few months later, Willis was given a poor performance review because, as Taylor put it, he “caused morale problems” when he reported Me-lancon’s involvement in the racist conversation. Then, about a year and a half later, Melancon and Taylor came to Willis’s home, told Willis that he was fired for having an inappropriate phone conversation with Sylvia and lying about it (which Willis denies), and Melancon added, “Boy, you will keep your mouth shut now.” This evidence is, without question, sufficient for Willis to satisfy his burden on summary judgment to demonstrate genuine issues as to material fact.
*326 True, when Willis was fired, the termination decision may have been based on the combination of both illegitimate considerations (ie., retaliatory or racist ones) and legitimate ones (i.e., the perception, correct or not, that Willis was dishonest in the company’s investigation of the alleged inappropriate phone conversation he had with Sylvia) together. This possibility of “mixed motives,” however, does not defeat Willis’s claims.
As for Willis’s retaliation claim, Cleco commits illegal retaliation if the termination would not have occurred “but for” Willis’s protected activity. Univ. of Tex. Sw. Med. Ctr. v. Nassar, — U.S. —, 133 S.Ct. 2517, 2534, 186 L.Ed.2d 503 (2013). Again, it is clear that there is sufficient evidence to support a reasonable inference that Willis would not have been terminated if he had not reported discrimination at the company. Although some time had passed between when Willis allegedly infuriated Melancon by reporting his conversation about the Grambling recruitment trip and when Willis was fired, the jury could reasonably infer that Melan-con, working with Taylor, had accomplished exactly what Melancon promised: “If we have to create a reason,” “we are going to terminate that nigger Greg Willis for reporting me.” It is a reasonable inference that, once Sylvia complained about Willis’s allegedly inappropriate conduct, Melancon and Taylor found their “reason.”
As for Willis’s race discrimination claim, Cleco commits illegal discrimination if race is a “motivating factor” in the termination. 42 U.S.C. § 2000e-2(m). Here, it is clear that there is sufficient evidence to find that, when Willis’s employment was terminated by Melancon, who allegedly referred to Willis as “that nigger,” race was a “motivating factor” in the decision.
The majority faults Willis for not identifying a “similarly situated comparator,” that is, another Cleco employee “who was treated differently [than Willis] under nearly identical circumstances.” Ante, at 320, 320 n. 6. The majority’s argument is without merit. Where the evidence is that an employee’s boss announces that he has decided to “terminate that nigger,” neither the law nor common sense requires the employee to show “similarly situated comparators” in order to prove that race was a motivating factor in the termination. See, e.g., Brown v. E. Miss. Elec. Power Ass’n, 989 F.2d 858, 861 (5th Cir.1993) (use of the term “nigger,” a “universally recognized opprobrium [that] stigmatiz[es] African-Americans because of their race,” is direct evidence of discrimination).
Summary judgment in favor of Cleco Corporation is inappropriate here.
I respectfully dissent from the majority’s denial of Willis’s claims of discriminatory and retaliatory termination. I concur in allowing Willis’s claim regarding the disciplinary warning to go to trial.

. On September 17, 2010, Cleco Corporation moved for summary judgment on all of Willis's claims. R. 373-77 (District Court Doc. No. 35). On September 22, 2011, the district court granted the motion in part and denied it in part. Id. at 3335-71 (District Court Doc. No. 105), 3372-73 (District Court Doc. No. 106). On March 8, 2012, Cleco Corporation filed a second motion for summary judgment addressing Willis's claims that survived the first motion. Id. at 3812-17 (District Court Doc. No. 137). Willis opposed the motion and asked the district court to reconsider the district court’s resolution of the first motion. Id. at 4045-63 (District Court Doc. No. 149). The district court denied Willis's request and granted the company’s second motion for summary judgment, thus disposing of all of Willis's claims of retaliation and race discrimination. Id. at 4724-45 (District Court Doc. No. 157), 4746 (District Court Doc. No. 158).

. Id. at 384-86 (Willis Dep.), 455 (Taylor Decl.).

. Id.

. Id. at 389-92 (Willis Dep.).

. Id. at 394 (Willis Dep.), 4424 (Taylor Dep.).

. Id. at 4082 (Ardoin Decl.).

. Id. at 4146 (Lacour Decl.).

. Id. at 4189 (Willis Decl.).

. Id. at 4191 (Willis Decl.).

. Id. at 392-99, 440 (Willis Dep.), 453-54 (Letter from Willis to George Bausewine, Sr., Vice President of Support Services, Cleco Corp.).

. Id.

. Id.

. Id. Melancon denies that Cooper said anything inappropriate to him. He says:
Cooper never made disparaging remarks regarding African-Americans. In that conversation between Cooper and myself, I simply explained to Cooper some of the actions and initiatives Cleco was taking with regard diversity, which included visiting Grambling State University, so that she could consider writing an update regarding Cleco's diversity efforts.
Id. at 462 (Melancon Decl.).

. Id. at 392-99, 440 (Willis Dep.), 453-54 (Letter from Willis to George Bausewine, Sr., Vice President of Support Services, Cleco Corp.).

. Id.

. Id.

. Id. at 3834 (Willis Dep.).

. Id.

. Id.

. Id.

. Id.

. Id.

. Id.

. Id.

. Id. at 3834 (Willis Dep.), 4185-86 (Willis Decl.).

. Id. at 3834 (emphasis added).

. Id.

. Id. at 4084 (Ardoin Decl.).

. Id. at 3858-59 (Willis Dep.), 3874-75 (Disciplinary Warning), 3876-77 (Taylor Decl.).

. Id.

. Id.

. Id. The disciplinary warning states that it is "From: Ed Taylor,” but the document is signed by both Taylor and Melancon.

. Id. at 3877-78 (Taylor Decl.).

. Id. at 3828-29 (Willis Dep.).

. Id. at 3837 (Willis Dep.).

. Id.

. Id. at 479-82 (Sylvia Decl.).

. Id.

. Id.

. Id.

. Id. at 481 (Sylvia Decl.), 456 (Taylor Decl.).

. Id. at 457-58 (Taylor Decl.).

. Id.

. Id.

. Id.

. Id.

. Id. at 458 (Taylor Decl.), 464 (Melancon Decl.).

. Id.

. Id. at 4186 (Willis Decl.).

. It has been said that, in discrimination cases, "there will seldom be ‘eyewitness’ testimony as to the employer's mental processes.” Reeves, 530 U.S. at 141, 120 S.Ct. 2097. This is one of the rare cases in which there is “eyewitness” testimony — here, Ardoin’s.