# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 00-20167

LOUELLA HENDERSON;
HERBERT WILLIAMS, III,

Plaintiffs-Appellants,

versus

CITY OF HOUSTON, TEXAS
PUBLICWORKS & ENGINEERS
DEPARTMENT,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. H-98-CV-3035

September 18, 2001

Before POLITZ and EMILIO M. GARZA, Circuit Judges, and KAZEN,[*] Chief District
Judge.

POLITZ, Circuit Judge:[**]

---

[*]Chief District Judge of the Southern District of Texas, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should
not be published and is not precedent except under the limited circumstances set forth
in 5TH CIR. R. 47.5.4.

Louella Henderson and Herbert Williams III appeal the exclusion of evidence during trial of their Title VII action against the City of Houston Public Works & Engineers Department. They also challenge the court's jury instructions governing each party's burden of proof. For the reasons assigned, we affirm.

## BACKGROUND

Henderson and Williams, both African-American, worked as Community Service Inspectors for the City of Houston in the Neighborhood Protection Division. Six candidates applied for a Senior Inspector position within that Division, including Henderson, Williams, and Edward Robinson. The three supervisors from the Division who interviewed the applicants were Chief Inspector Dan Petrash, Assistant Chief Inspector B.J. Thompson, and Senior Inspector Henry Bolding. Petrash is a white male; Thompson and Bolding are black males. After each interview, the panel members rated each applicant, using a "one" to represent the lowest score and a "five" for the highest. Bolding gave Henderson a four, and Williams and Robinson a five. Thompson gave both Henderson and Williams a five, but apparently missed Robinson's interview and did not rate him; he did not recommend anyone to Petrash. Petrash rated both Henderson and Williams at four and Robinson at five. Bolding submitted Williams and Robinson as his top choices. After reviewing the employee performance evaluations Petrash submitted those two names to Senior Assistant Director Bea Link.

2

After talking with Link, Petrash indicated that his preference for the position was Robinson.

The evidence reflects that Petrash also spoke with the Chief Inspectors who supervised the three interviewed applicants. Henderson's Chief Inspector, Tommy Scott, informed Petrash that Henderson, while good at her position, lacked supervisory qualities. Chief Inspector Pete DeLosSantos, Williams' and Robinson's supervisor, recommended that Robinson be selected. Link chose Robinson for the assignment.

Henderson and Williams filed the instant action claiming discrimination because of their race and national origin in violation of Title VII. Henderson advanced a claim of gender discrimination and Williams added a claim of age discrimination. The district court initially ruled that appellants abandoned their age and gender related claims, as well as any claims under Section 1983. The court then proceeded with appellants' Title VII and Section 1981 claims, but declared a mistrial after the jury failed to reach a unanimous verdict. The second trial ended with a jury verdict for the City and this appeal followed.

## ANALYSIS

Appellants advance three contentions on appeal. Initially, they challenge the court's instruction to the jury regarding the City's non-discriminatory explanations for its hiring decision. They then dispute the legality of instructing the jury not to second-

guess the City's hiring decision. Finally, they urge error in the court's decision to exclude Charles Antoine, a witness who allegedly heard Petrash refer to black employees using a racial epithet, and to exclude evidence that Petrash has a tattoo of the confederate flag.

## I.    The Jury Instructions

"Challenges to jury instructions are reviewed to determine whether the court's charge, as a whole, is a correct statement of the law and clearly instructs jurors on the legal principles at issue."[1]  We also must determine if the alleged error was harmless. Accordingly, "[e]ven if an instruction erroneously states the applicable law or provides insufficient guidance, this Court will not disturb the judgment unless the error could have affected the outcome of the trial."[2]

### A.    Evidentiary Burden Instruction

Henderson and Williams first challenge the court's instruction on their burden of proof.  In pertinent part, the court instructed the jury as follows:

> In considering whether a Plaintiff in this case has met his or her burden on this matter, you may infer discriminatory intent from substantial evidence that the employer's reasons are false if you find that the City has introduced fabricated justifications for the promotion of the successful

---

[1]  Rubinstein v. Administrators of the Tulane Educational Fund, 218 F.3d 392, 404 (5th Cir. 2000).

[2]  Id.

4

candidates and you find that the City has not otherwise suggested a credible nondiscriminatory explanation.

Appellants characterize this as a "pretext plus" instruction, asserting that it impermissibly increased their burden of proof by requiring not only a showing of falsity but also that their employer offered no credible nondiscriminatory explanations for its actions. We are not persuaded.

In Reeves v. Sanderson Plumbing Products, Inc.,[3] the Supreme Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."[4] Accordingly, a plaintiff need not, in every case, introduce additional, independent evidence of discrimination. Rather, "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."[5]

Nothing in the Reeves teachings warrants a finding that the instruction at issue provided an incorrect statement of the law. Rather than create a "pretext plus" standard, the instruction allows the jury to reach the very conclusion authorized by

---

[3] 530 U.S. 133 (2000).

[4] Id. at 148.

[5] Id. at 147.

Reeves and it does not require any independent evidence of discriminatory intent. While the language is somewhat duplicative, the charge instructs that if the jury finds the City's nondiscriminatory justifications to be false and concludes that appellants offered sufficient evidence to establish a prima facie case, it may impose liability. The instruction correctly places the burden on plaintiffs to establish that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."[6] We find no error in this instruction.

## B. The "Second-Guess" Instruction

Appellants also urge error in the court's instruction regarding the City's judgment in selecting a qualified candidate for the job. That instruction stated:

> You the jury, are not to second-guess the Defendant City's promotion decision as to which candidate was the best suited or most qualified for the job. Rather, you must decide whether or not race was a motivating factor in the city's decision. You are instructed that the City, as an employer, is free to direct its workforce as it considers best to meet its objectives.

Appellants assert that by directing the jury not to "second-guess the Defendant City's promotion decision" the court precluded the jury from considering whether the City's explanation was false.

We decided this question in Deines v. Texas Dept. of Protective and Regulatory

---

[6] Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Services,[7] where petitioner challenged an instruction that read "[y]ou as a jury are not here simply to second guess the defendant's hiring decision as to which candidate was best qualified or best suited for the job." We affirmed the use of such instruction, stating:

> [I]t is not the function of the jury to scrutinize the employer's judgment as to who is best qualified to fill the position; nor is it the jury's task to weigh the respective qualifications of the applicants. Whether the employer's decision was the correct one, or the fair one, or the best one is not a question within the jury's province to decide. The single issue for the trier of fact is whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination.[8]

Rather than take away the jury's ability to consider evidence of falsity, the instruction at issue focused the jury on the core question: whether or not race was a motivating factor in the City's decision. We find no error in this instruction.

## II.    Evidentiary Rulings

We review evidentiary rulings of the district court for abuse of discretion.[9] Appellants urge error in the court's decision to exclude testimony from a City employee and the exclusion of evidence relating to Petrash's tattoo. Neither ruling constituted an abuse of discretion.

---

[7]  164 F.3d 277 (5th Cir. 1999).

[8]  Id. at 281.

[9]  United States v. Phillips, 219 F.3d 404 (5th Cir.2000).

7

A.      Exclusion of Antoine's Testimony

Appellants first contend that the court erred in excluding the testimony of Charles Antoine, a City employee who claimed to have heard Petrash use a racial epithet in 1996 or 1997, and also prior to 1995. Appellants point to the difficulty of proving discriminatory intent through direct evidence, urging that Antoine's testimony would have provided crucial circumstantial evidence of Petrash's racial animus and motivations. While we agree that most discrimination cases rely heavily on circumstantial evidence, we cannot agree that the court erred in excluding Antoine's testimony.

The record reflects two principal concerns underlying the court's ruling. First, the court disapproved of Antoine's late arrival in the case and the failure of appellants' counsel to supplement their discovery. Antoine's tardiness also upset the court because the parties had already tried the case once and Antoine worked for the City. Second, the court expressed concern that Antoine's testimony consisted of a vague recollection of statements properly characterized as stray remarks, and that they were too remote in time to be related to any involvement by Petrash in the promotion decision. While routine use of racial slurs may constitute direct evidence that race was a motivating

factor in an employment decision,[10] appellants' proffer regarding Antoine's testimony showed only that Petrash used the epithets on a few separate occasions, not on a routine basis. The court's stated concerns constitute sufficient grounds for exercising its discretion to exclude the testimony.

## B.    Exclusion of Evidence Regarding Petrash's Tatoo

Appellants also challenge the court's decision to exclude evidence of Petrash's tattoo of a confederate flag. Appellants contend that it is probative, arguing that "a sizeable percentage of the population believes the confederate flag to be a symbol of slavery and Jim Crow Attitudes." Second, they assert that any prejudice stemming from the introduction of the tattoo is not "unfair" prejudice.

The record contains an extensive discussion by the court providing its reasons for excluding evidence of the tattoo. The court's primary reason focused on the time frame in which Petrash made the decision to apply the tattoo. Petrash got the tattoo in 1958, at age 19, while on shore leave in the Navy and apparently under the influence of alcohol. Accordingly, any racial animus that might be associated with such an act was too remote to be probative of discriminatory intent. The court also indicated the dubious probative value of the tattoo in light of the word "Texas" printed across the

---

[10]  See, e.g., Brown v. East Miss. Electric Power Ass'n, 989 F.2d 858, 861 (5th Cir. 1993).

flag. Finally, the court held that under Federal Rule 403, evidence of the tattoo, especially in light of recent publicity regarding confederate flags, would cause unfair prejudice that substantially outweighed any probative value.

The court provided sound and well-reasoned explanations supporting its ruling and we find no abuse of discretion in its decision to exclude evidence of Petrash's confederate flag tattoo.

### III. Conclusion

We find no error in the trial court's instructions to the jury or in its evidentiary rulings excluding the testimony of Mr. Antoine and evidence of Mr. Petrash's tattoo. For the reasons assigned, we AFFIRM.