BRIGHT, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s opinion. This case is not about contract law. It is about statutory interpretation and, as the Secretary of Labor recognized, Congress’ goal of protecting our nation from a nuclear accident through the promotion of safety in the nuclear power industry. Quite simply, workers who report safety violations should be protected and not suffer retaliation for their good deeds.
In the instant case, the Secretary looked to the text and underlying purposes of the employee protection provisions of the ERA and construed the statute to protect Shannon T. Doyle’s ERA whistleblower rights. Because of the compelling public interest in keeping channels of information open, the Secretary decided that employees must not be compelled to sign what they believe to be a waiver of past and future ERA claims as a condition of employment.
*255 On its face, Hydro’s waiver can be read to release former employers as well as putative employers from liability.[1] This is how Mr. Doyle, a lay person unrepresented by counsel, read the release during his pre-employment screening, and it is likely how a lay person in the same situation would understand the release language.[2] The legal insufficiency of the waiver is immaterial because an ordinary reader would not know that the waiver could not be used by the employer as a defense to a retaliation claim.
I would reject this release not just as a violation of Mr. Doyle’s ERA rights, but as a violation of all employees’ rights. Anyone signing this release could be left with the impression that they have waived their right to bring a retaliation suit against Hydro or any past employer. This impression would chill the employee’s inclination to report safety issues to the proper regulatory authorities. Under this scenario, Congress’ goal of making the nuclear industry safer by protecting potential whistleblowers is fundamentally undermined. See Passaic Valley Sewerage v. United States Dept. of Labor, 992 F.2d 474, 478 (3d Cir.1993) (“Such ‘whistle-blower’ provisions are intended to promote a working environment in which employees are relatively free from the debilitating threat of employment reprisals for publicly asserting company violations of statutes protecting the environment.... ”).
A broad interpretation of the scope of ERA protection comports with the ERA’s remedial purpose and the legislative history indicating that a narrow interpretation of the employee protection provisions would frustrate the intent of Congress. See Connecticut Light & Power Co. v. Secretary of Labor, 85 F.3d 89, 94 (2d Cir.1996) (upholding Secretary’s broad interpretation of the term “employee” to cover an employee recently terminated). See also Bechtel Constr. Co. v. Secretary of Labor, 50 F.3d 926, 932 (11th Cir.1995) (“[I]t is appropriate to give a broad construction to remedial statutes such as nondiscrimination provisions in federal labor laws.”); Kansas Gas & Elec. Co. v. Brock, 780 F.2d 1505, 1512 (10th Cir.1985) (affirming the Secretary’s broad interpretation of protected activity).
Additionally, Hydro’s refusal to alter the release upon learning of Mr. Doyle’s concerns supports the inference that Hydro used Doyle’s refusal to sign as a convenient way to avoid hiring an individual who is zealous about nuclear safety. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (“Proof that the defendant’s explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.”).
Finally, Hydro did not need the waiver of liability to get the information it required about Mr. Doyle. The screening procedures of the American National Standard on Security for Nuclear Power Plants (ANSI) indicate that all the background information necessary to meet the ANSI standard can be obtained through a simple *256 release; there is nothing in the standard or screening requirements that requires a waiver of liability. The Secretary makes this point forcefully: “Respondent has not offered any reason why the background information it needs to conduct the screening under the ANSI standard cannot be obtained with a release which does not include a waiver of liability.” JA at 21.
I would sustain the Secretary’s decision. In this case, we have done a grave injustice to Mr. Doyle, a man who was blacklisted from his chosen line of work for attempting to preserve his rights under a federal statute.[3] We have upheld an employer’s ability to make its employees uncertain about the status of their nuclear whistleblower rights. We have thereby dealt a blow to the safety of the nuclear industry.

. The waiver of liability includes sweeping terms, such as “furnishing or receiving any information pertaining to me from any and all liability or claim ...” (emphasis added).

. I quote from the Secretary’s decision:
I note that Complainant is a layman who was not represented by counsel when the dispute over the authorization form took place. Even lawyers can disagree over the scope and effect of the language in question. It is not surprising that Complainant refused to sign a form which could easily be interpreted as a waiver of his rights under the ERA.
JA at 16, n. 1.

. Despite diligently seeking employment outside the nuclear industry, Mr. Doyle was only able to obtain three non-nuclear related jobs between November 1988 and December 1994 (the date of the hearing on damages) from which he earned a total of about $3000. Hydro’s publication of its decision to deny Mr. Doyle access at a nuclear power plant had a devastating psychological, emotional, and financial impact on Mr. Doyle and his family.