# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No. 00-21062

---

CARL JUSTIN SHANNON, JR.,                                    Plaintiff-Appellant,

versus

HIMONT USA INC., ET AL.,                                     Defendants,

HIMONT USA INC., MONTELL USA INC.,
MONTELL POLYOLEFINS BV,                                      Defendants-Appellees.

---

Appeal from the United States District Court
for the Southern District of Texas
H-98-CV-3849

---

July 30, 2002

Before BARKSDALE and STEWART, Circuit Judges, and DUPLANTIER, District Judge.[*]

CARL E. STEWART, Circuit Judge:[**]

Carl Justin Shannon, Jr. ("Shannon") appeals the district court's grant of summary judgment

in favor of Himont USA Inc., Montell USA, Inc., and Montell Polyolefins BV, on Shannon's claim

of national origin discrimination under the Texas Commission on Human Rights Act ("TCHRA").

---

[*]District Judge of the Eastern District of Louisiana, sitting by designation. Judge Duplantier was a member of the panel that heard oral arguments. However, he subsequently recused himself and did not participate in the consideration of this case. This case is being decided by a quorum pursuant to 28 U.S.C. § 46(d) (1996).

[**]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

For the following reasons, we REVERSE the decision of the district court and REMAND for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Shannon began his employment with Himont, USA, Inc. in July of 1989. He worked as the Director of Engineering, North America. In 1993, a joint venture commenced between Montedison, an Italian company, and Royal Dutch Shell ("Shell"), a Dutch company, resulting in the formation of Montell. At this time, Shannon became an employee of Montell. Until shortly before Shannon was terminated, Walter Bromm ("Bromm"), Montell's Senior Vice President, supervised Shannon. Since the inception of Montell, Peter Vogtlander ("Vogtlander") was the Chief Executive Officer.

In May of 1997, Bromm decided to retire. During a conversation between Bromm and Vogtlander regarding filling Bromm's soon-to-be vacated position, Vogtlander indicated that he felt pressure to give the position to an Italian due to the recent employment of a Norwegian in the position of Chief Financial Officer.[1] After Bromm's retirement, he was in fact replaced by an Italian, Georgio Secchi ("Secchi").

Shortly after Secchi took over Bromm's position, and possibly at Secchi's urging, an audit was conducted of the travel reimbursement forms of several employees, including Shannon, who had traveled to Holland during the fall of 1996. The audit found that, due to the usage of erroneous exchange rates, the group had been overcompensated by $36,000. Shannon was reimbursed $1,700 more than he was due. Apparently, Shannon had improperly used the hotel exchange rate, rather than the authorized rate–the rate utilized by American Express. In October of 1997, Montell fired

---

[1] The individual placed in the position of Chief Financial Officer was Peter Vonderlon, described by Bromm as a "Shell individual."

Shannon for failing to comply with its policy on reimbursements. Shannon was the only employee fired. After Shannon's termination, the next three individuals to fill his position were Italian.[2]

Shannon brought suit under the TCHRA, alleging that he was terminated because he is not Italian. See TEX. LAB. CODE ANN. § 21.051 (Vernon 1996). He also made claims of age discrimination and defamation. Montell subsequently moved for summary judgment and in response, Shannon voluntarily withdrew the age discrimination and defamation claims. The district court entered summary judgment on behalf of Montell and this appeal followed.

## STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo. Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In the instant action, our analysis will be guided by Reeves v. Sanderson Plumbing Prods., Inc., which set forth the authoritative standard for summary judgment in discrimination cases.[3] See 530 U.S. 133 (2000).

## DISCUSSION

Shannon's claim is straightforward. He asserts that another Italian company, Technimont, a wholly-owned subsidiary of Montedison (the joint venture partner with Shell), performed a great deal of Montell's engineering work. He further contends that Technimont was seeking to engage in

---

[2] On a temporary basis, Secchi filled Shannon's vacated slot. Subsequently, Paolo Merlo, an Italian national, took over the job. Finally, Lou Grasso, an Italian-American was placed in the position.

[3] Although Reeves dealt with judgment as a matter of law, the standards are the same. Reeves, 530 U.S. at 150.

further business with Montell.[4]   His theory is that Technimont applied pressure to ensure that its representatives were placed in upper-level engineering jobs, such as the position previously held by Shannon. In an effort to appease Montedison, Shannon argues, Montell sought to fill high-level engineering positions with Italians. Further, Shannon contends that Montell sought to placate both of its shareholders, Montedison and Shell, by ensuring that its representatives were equally placed in upper-level positions. Shannon asserts that the result was that he was terminated because he is not Italian.

On appeal, Shannon asserts three points of error. First, he argues that the district court improperly discounted evidence that national origin played a role in his termination. Second, he contends that the district court erroneously required Shannon to satisfy a "pretext plus" standard. Finally, Shannon maintains that the district court improperly applied Reeves by considering controverted evidence when granting summary judgment. We now turn to Shannon's first contention.

Absent direct evidence of discrimination, we apply the framework set forth in McDonnell Douglas Corp. v. Green. 411 U.S. 792, 802-04 (1973).[5] Under this framework, a plaintiff must first establish a prima facie case of discrimination. Id. at 802. To establish a prima facie case, an individual must establish that (1) he is a member of a protected group, (2) he was qualified for the position held, (3) he was discharged from the position, and (4) he was replaced by someone outside of the protected

_____

   [4] Montedison was both a shareholder in Montell and, through its subsidiary, Technimont, a service provider.

   [5] Due to the surfeit of authority construing Title VII, our opinion is guided largely by federal case law. Texas state courts recognize that it is proper to look to Title VII case law when interpreting the TCHRA. E.g., Graves v. Komet, 982 S.W.2d 551, 554 (Tex. App. 1998) ("Because our state statute tracks its federal counterpart . . . [T]itle VII . . . we may consider analogous federal case law in the interpretation and application of our Texas statute.").

group. Singh v. Shoney's, Inc., 64 F.3d 217, 219 (5th Cir. 1995). If a plaintiff succeeds in showing a prima facie case, the defendant must then provide a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. Lastly, if the employer meets this burden, the plaintiff must demonstrate, by a preponderance of the evidence, that the proffered reason was a pretext for discrimination. Id. at 804.

Montell does not dispute that Shannon has established a prima facie case of discrimination. Instead, it asserts that it fired Shannon for legitimate, non-discriminatory reasons. Namely, Shannon's supervisors lost faith in his management ability and he used an improper exchange rate on his expense reimbursement form. As such, the burden shifts to Shannon to create a fact issue as to whether Montell's asserted justification for his termination was pretextual.

We conclude that Shannon met this burden. Shannon presented the following evidence of pretext. First, no Montell employee had ever been fired for estimating an exchange rate on an expense report. Additionally, none of the other overcompensated employees involved in the audit were terminated.[6] During Bromm's deposition, he explained that termination on this basis "would have been very unusual." In fact, he testified that termination would not be the proper remedy for such an infraction and that the appropriate course of action in such a situation would be "very simple" – "change it on the expense report." Further, Bromm testified that he often used the hotel exchange rate on his expense report when he did not have his American Express bill available. He explained that estimating a rate was a frequent occurrence and that he did so even when the rate utilized was

---

[6] With regard to this evidence, the district court found that "[p]laintiff complains that others involved in the inaccurate expense reports were not fired. He fails to show that any of these people [were] Italian." This misses the point. Shannon's theory is that Montell wanted to place Italians in upper-level engineering positions to placate its Italian shareholder. If he is correct, then there would be no need to fire any other individuals involved in the audit, whether or not they were Italian, as they did not hold upper-level engineering positions.

5

advantageous to him. Since Bromm was Shannon's immediate supervisor, it evidences pretext that Shannon was fired for engaging in behavior deemed acceptable by his direct superior.[7] Although there is some dispute about whether Shannon in fact had his American Express bill when his report was prepared, thereby obviating the need to use the hotel rate, this type of controverted evidence should be presented to a jury.

Further, according to Secchi, *prior* to the investigation into Shannon's expense report, Secchi hired Paolo Merlo ("Merlo") with an eye toward replacing Shannon. Since Merlo was the first individual to replace Shannon on a permanent basis,[8] and since Secchi had intended this result before the investigation into Shannon's expense reports, a jury could consider this circumstance as evidence of pretext. While Secchi maintains that when he hired Merlo to replace Shannon, he did not intend to fire Shannon, but instead to move him into a non-management position.[9] Shannon counters that this acknowledgment supports his claim that Montell wanted Shannon out of his position prior to the expense report investigation and that the investigation was just a ruse to aid his exit. Moreover, Secchi testified that due to Shannon's lack of managerial skills, he wanted to replace him as early as May of 1997. However, Shannon presented evidence that only one month prior, he received a pay increase and was notified that he would be receiving a performance bonus in excess of $50,000. Shannon argues that the fact that he was told he would be receiving a performance bonus contradicts

---

[7] Further, no one attempted to contact Bromm about the reports at issue, despite the fact that he had authority to approve or disapprove of them and, in fact, did sign-off on the reports at the time Shannon submitted them for reimbursement. Bromm stated that his sign-off indicated his approval on behalf of Montell.

[8] Although Secchi originally filled Shannon's position, he testified that this was only on a "temporary basis," until a permanent replacement could be found.

[9] Secchi testified that Shannon was a good engineer, but a poor manager.

6

Secchi's account that Montell was displeased with Shannon's management abilities during this time period.   In sum, whether Montell wanted Shannon moved because he was not a good manager, or because of the need to open a high-level engineering position to an Italian, is a question properly left to the jury.   As such, we reverse and remand for further proceedings not inconsistent with this opinion.[10]

## CONCLUSION

Because we find that the district court failed to give weight to Shannon's proffered evidence of pretext, we REVERSE and REMAND to the district court for further proceedings.

REVERSED and REMANDED.

---

[10] Because we conclude that Shannon satisfied his burden of proof regarding pretext, we do not need to address Shannon's other points of error.

7