Michael NADER, Plaintiff,

v.

ABC TELEVISION, INC. Defendant.

No. 02 Civ. 9948(JSR).

United States District Court,
S.D. New York.

Aug. 7, 2004.

Joseph J. Ranni, Law Office of Joseph J. Ranni, Goshen, NY, for plaintiff.

Kathleen M. McKenna, Amy Regan, Proskauer Rose, Llp, New York City, for defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

The on- and off-stage melodrama of "All My Children" may make for successful soap opera, but as a lawsuit it's a bust. In the instant case, Michael Nader, who once played the now-liquidated character of "Dimitri Marick," expresses shock and dismay that ABC, after crying crocodile tears at his second criminal arrest, went ahead and fired him anyway. But his angst does not translate into any legal claim that can survive summary judgment.

The facts, either undisputed or, where disputed, taken most favorably to plaintiff, are as follows. Between 1991 and July 1999, plaintiff Michael Nader played the role of Dimitri Marick on "All My Children," a well-known daytime drama produced by defendant ABC Television, Inc. ("ABC"). *See* Deposition of Michael Nader taken June 13, 2003 ("Nader Deposition") at 110–111. ABC then terminated its contract with Nader and wrote the character out of the play. *See* Nader Deposition at 151–52; Declaration of Kathleen M. McKenna, Esq. dated August 29, 2003 ("McKenna Declaration"), Ex. B (Letter dated June 2, 1999 from Robert K. Fitzpatrick, Esq. to Michael R. Nader confirming Nader's termination effective July 25, 1999). Less than a year later, however, ABC decided to bring back Dimitri, and for this purpose it entered into a new employment contract with Nader (referred to therein as "Artist") initially dated March 7, 2000 and revised to its final form on April 11, 2000 (the "contract"). *See* McKenna Declaration, Ex. C (the contract).

Appended to the contract, and expressly incorporated therein, were ABC's Standard Terms and Conditions. *See id.* at p. 6, ¶ 23. Paragraph 8 of those Standard Terms and Conditions, a so-called "morals clause," provided as follows:

8. *MISCONDUCT.* If, in the opinion of ABC, Artist shall commit any act or do anything which might tend to bring Artist into public disrepute, contempt, scandal, or ridicule, or which might tend to reflect unfavorably on ABC, any sponsor of a program, any such sponsor's advertising agency, any stations broadcasting or scheduled to broadcast a program, or any licensee of ABC, or to injure the success of any use of the Series or any program, ABC may, upon written notice to Artist, immediately terminate the Term and Artist's employment hereunder. In the event ABC terminates Artist's services pursuant to the provisions of this Paragraph, ABC shall be discharged from all obligations hereunder by making any and all payments earned and payable on account of services performed by Artist prior to such date of termination. The guarantee, if any, applicable to the cycle in which such termination is effective shall be automatically reduced to the number of programs produced in such cycle and on which Artist rendered services prior to the effective date of such termination. In addition to whatever other right ABC may have, ABC may also remove Artist's credit, if any, from all such programs on which such credit may have appeared.

*Id.* at p. 9, ¶ 8.

On February 24, 2001, Nader was arrested and charged with one count of criminal sale of a controlled substance (namely, cocaine) and one count of resisting arrest. *See* McKenna Declaration, Ex. E (Criminal Court Complaint). Although ABC had taken no adverse employment action on a

previous occasion (August 22, 1997) when Nader had been arrested and charged with driving while intoxicated and resisting arrest, *see* McKenna Declaration, Ex. D, in response to this further arrest on February 24, 2001, ABC suspended Nader.

Specifically, on February 28, 2001, at a meeting attended, on the one hand, by Nader and his attorneys Zachary Flax and Joseph Stalonas and, on the other hand, by the president of the daytime division of ABC, Angela Shapiro, and an ABC in-house attorney, Tanya L. Menton, ABC informed Nader that he was under suspension "pending the outcome of that [drug sale] charge," Nader Deposition at 234, and that any further decision on his employment status would be "based on a review of the outcome of this indictment [*sic* ]," *id.* at 166–67. Nader states that he was further told "if these charges are not true, all indications would—we [ABC] would like you to come back to work," *id.* at 164, and that ABC was "glad" that he was "going away tomorrow to pursue [his] recovery" at a drug treatment facility in Hazelden, Minnesota, *id.* at 166.

Despite these statements, however, and despite Nader's admission on March 2, 2001 to a 28–day in-patient program at Hazelden, *see* McKenna Declaration, Ex. G, ABC sent him a letter on March 16, 2001 formally terminating his employment on the ground that he had "breached the clear language and intent of paragraph 8 of the Standard Terms and Conditions," *i.e.*, the morals clause. *See* McKenna Declaration Ex. I.

In the months following Nader's termination, his criminal lawyer, Zachary Flax, continued to have periodic but inconclusive communications with ABC's in-house lawyer, Tanya L. Menton, about whether ABC might re-hire Nader. Ultimately, in September 2001, Nader had another meeting with ABC, at which, according to Nader, "I was told face-to-face . . . that I was not wanted back on the show. I would never be wanted back on the show again." Nader Deposition at 194.

From these facts, Nader's counsel has somehow managed to infer no fewer than eight legal claims. Specifically, the Second Amended Complaint alleges that ABC discriminated against Nader on the basis of his "disability" of being addicted to cocaine, in violation of federal law (First Claim), New York State law (Second Claim), and New York City law (Third Claim), and that ABC breached its contract with Nader (Fourth Claim) and committed related state law violations in the form of fraudulent misrepresentation (Fifth Claim), fraudulent inducement (Sixth Claim), unjust enrichment (Seventh Claim), and breach of the implied covenant of good faith and fair dealing (Eighth Claim). ABC now moves for summary judgment in its favor on all of Nader's claims.

██ Nader's discrimination claims allege, in essence, that ABC both terminated him and failed to re-hire him because of his addiction to cocaine.[1] Regarding termination, however, ABC's letter of March 16, 2001 expressly notified Nader that he was being terminated because he had breached the morals clause of his contract. This was a facially legitimate reason for termination, because the morals clause permits ABC to terminate any "Artist" if "in the opinion of ABC, Artist shall commit any act or do anything which might tend to

---

1. All of plaintiff's disability discrimination claims are governed, for all relevant purposes, by the same analytical framework and legal standards, whether brought under the federal Americans with Disabilities Act, the New York State Executive Law, or the New York City Charter and Administrative Code. *See, e.g., Kolivas v. Credit Agricole*, 1996 WL 684167, *3, 1996 U.S. Dist. LEXIS, at *9 (S.D.N.Y.1996).

bring Artist into public disrepute, contempt, scandal, or ridicule, or which might tend to reflect unfavorably on ABC." McKenna Declaration, Ex. C at p. 9, ¶ 8. Here, it is undisputed that plaintiff's arrest occasioned publicity and media attention, *see* McKenna Declaration, Ex. F; Plaintiff's Response to Defendant's Local 56.1 Statement of Material Facts, ¶ 14, and that ABC was concerned about the coverage, *see* Nader Deposition at 234.

Thus, the burden shifts to Nader to adduce evidence that ABC's stated reason for termination was pretextual and that the real reason was discriminatory. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir. 2000). But while Nader's counsel speculates that ABC's real reason for terminating Nader's employment was a concern that the four weeks Nader would have to spend at Hazelden to treat his cocaine disability would delay production of "All My Children," he offers not a scintilla of admissible evidence to support this conjecture. Indeed, what little evidence of record there is on this subject is all to the contrary. *See* Declaration of Felicia M. Behr dated August 28, 2003 at ¶¶ 5–11; Deposition of Felicia M. Behr taken June 26, 2003 ("Behr Deposition") at 82–83.

As for ABC's "decision" not to re-hire him, Nader does not adduce any admissible evidence that ABC ever promised to do so. By contrast, ABC has adduced evidence, wholly unrebutted by Nader, that it never retreated from its decision of March 16, 2001 to terminate him for violation of the morals clause. *See, e.g.,* Behr Deposition at 132–33.

Accordingly, the Court grants summary judgment in defendant's favor on the first three claims of the Second Amended Complaint.

■ Regarding the Fourth Claim, for breach of contract, the Court has already indicated why it believes ABC was well within its contractual right to terminate plaintiff's employment for violations of the morals clause. *See supra.* Nader's arguments to the contrary are unpersuasive: (1) notice was by no means defective given that ABC sent the letter to Nader at the same address that was the one and only address on Nader's initial contract, *i.e.* the address for his agent, Arthur Toretzky, *see* McKenna Declaration Ex. C (the contract); McKenna Declaration Ex. I (the termination letter); (2) ABC was under no contractual obligation to immediately terminate Nader for violations of the morals clause; the clause states only that ABC "may, upon written notice to Artist, immediately terminate ... Artist's employment," *see* McKenna Declaration, Ex. C at p. 9, ¶ 8 (emphasis supplied); and (3) the morals clause is not, on its face, so vague, ambiguous or overbroad as to render it void.

Having considered plaintiff's other objections and having decided they are meritless, the Court accordingly grants summary judgment in defendant's favor on the Fourth Claim of the Second Amended Complaint.

■ Nader's Fifth Claim, for fraudulent misrepresentation, is patently deficient. To establish a claim for fraudulent misrepresentation under New York law, plaintiff must show that (1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance. *See Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York,* 375 F.3d 168, 186 (2d Cir. 2004). Nader's claim, in effect, is that prior to the time ABC actually terminated

his employment, ABC falsely represented that it would reserve making any final determination about his employment until after the criminal case against him (specifically, the drug sale count) was resolved.[2] Such false representations, Nader alleges, were made in an attempt to "string him along" and prevent him from seeking other employment. Nader has failed, however, to adduce a shred of evidence—let alone the clear and convincing evidence of each element required under New York law, *see Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775, 784–85 (2d Cir.2003)—that ABC intended to defraud Nader (the second required element) or that Nader, in the two and a half week period between the February 28, 2001 meeting and his termination on March 16, 2001, suffered any damage as a result of his reliance on ABC's representations (the fourth required element). Accordingly, the Fifth Claim must fall.

Nader's Sixth Claim, for fraudulent inducement, fares no better. To state a claim for fraudulent inducement under New York law, Nader must establish a knowingly false representation of a material fact and reasonable but detrimental reliance thereon. *See Colodney v. Continuum Health Partners, Inc.,* 2004 WL 829158, at *9 (S.D.N.Y.2004). Here, Nader alleges, in effect, that ABC promised him that it would rehire him in an attempt to prevent a lawsuit for breach of contract. Nader's fraudulent inducement claim fails, however, because (1) Nader cannot point to a single statement in which ABC definitively promised him it would actually rehire him; (2) Nader has not established that he relied on any statement made by ABC, let alone that he reasonably and detrimentally relied on such a statement; and (3) New York law is clear that "speculation and expressions of hope for the future do not constitute actionable representations of fact," *see Albert Apartment Corp. v. Corbo Co.,* 182 A.D.2d 500, 501, 582 N.Y.S.2d 409 (1st Dept 1992). Accordingly, the Court hereby grants summary judgment in ABC's favor on the Sixth Claim of the Second Amended Complaint.

As for the Seventh Claim, for unjust enrichment, the Court grants summary judgment in ABC's favor on the ground that Nader has failed to demonstrate that any benefit improperly accrued to ABC.

Finally, the Court grants summary judgment in ABC's favor on Nader's Eighth Claim, for breach of the implied covenant of good faith and fair dealing, both because this claim is entirely duplicative of Nader's breach of contract claim, *see, e.g., New York University v. Continental Insurance Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1st Dept. 1995), and because, in any event, Nader has not proffered any evidence whatsoever of bad faith on the part of ABC.

Although Nader makes still further arguments in support of one or another of the aforementioned claims, the Court, upon careful review of these other arguments, finds that they are so lacking in merit as not to warrant any additional discussion here. For that reason, and for the reasons stated above, ABC's motion for summary judgment is hereby granted in its entirety,[3] and the Second Amended

---

**2.** At some point following Nader's termination—the precise date is not clear from the record—Nader plea-bargained the charges against him down to a guilty plea to one count of possession of a controlled substance, whereupon the original charges against him were dismissed. *See* Nader Deposition at 175; Affirmation of Joseph J. Ranni dated September 20, 2003, Ex. 17.

**3.** Correlatively, Nader's cross-motion for summary judgment is hereby denied in its entirety.

Complaint dismissed with prejudice. Clerk to enter judgment.

SO ORDERED.