United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 4, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-50712
Summary Calendar

_____

DENNIS K. MCFADDEN,

Plaintiff-Appellant,

versus

TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
Dominguez State Jail,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Western District of Texas
San Antonio Division
(No. SA 03-CA-340)

_____

Before GARZA, DEMOSS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

McFadden appeals the district court's ruling granting a motion for judgment as a matter of law ("JMOL") in favor of the Texas Department of Criminal Justice ("TDCJ"). For the following reasons, we affirm.

_____

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

McFadden, who is black, was employed by TDCJ as a correctional officer from December 6, 1990 to February 16, 2001. On August 10, 2000, McFadden was injured in the course of an altercation with a prisoner. On that day, McFadden filed a workman's compensation claim for an "inmate assault" and was sent home. The next day, McFadden visited a doctor and was informed that surgery was necessary to repair torn ligaments in his right hand. McFadden underwent surgery on August 21, 2000 and remained on medical leave until February 2, 2001, when his physician, Dr. Pace, determined that McFadden could return to work. The parties dispute whether Dr. Pace's note authorized McFadden to return to full duty, or to duty subject to restrictions.

McFadden reported for duty on February 2 wearing a splint on his right arm. Although the doctor's form was ambiguous, McFadden's supervisors believed that McFadden was cleared for full duty. They therefore ordered McFadden to leave work and to return that afternoon by 5 p.m. with an updated doctor's report. McFadden responded that he could not see the doctor without an appointment made in advance, and reminded his supervisors that he had an appointment scheduled for February 12, 2001. He left work as directed, and was unable to obtain an earlier appointment.

That same day, February 2, human resources specialist Roxann Redus wrote and signed a document advising McFadden that his leave without pay was expiring and that his work status was changed to "separation." The leave without pay expired on February 16, but McFadden returned to duty on February 15. The letter was accordingly voided.

Also on February 2, at approximately 5:45 p.m., safety officer Andrew Britt prepared a Rule 13 disciplinary charge against McFadden for failure to bring in a new doctor's note by 5 p.m. that day as directed.[1]

Redus telephoned McFadden several times over the next several days to see if he had visited the doctor as directed. Redus left messages on February 5 and 6, telling McFadden that it was urgent for him to call the unit because he was out of compliance with policy. McFadden did not return Redus's phone calls.

On March 5, McFadden appeared at a disciplinary hearing before Warden Kinker, prepared to defend himself against Britt's Rule 13 charge regarding bringing a new doctor's note by 5 p.m. on February 2. Kinker apparently acknowledged that the Rule 13 charge was unreasonable, because it may well have been impossible for McFadden to obtain an appointment on no advance notice. Kinker changed the subject of the hearing to a Rule 20 Charge, which covers Violation of Policies and Procedures. This charge was based on the fact that McFadden failed to call in every day between February 2 and February 15. McFadden was found guilty of the Rule 20 violation, and because McFadden had two previous violations within the preceding year, which are not contested here, he was terminated pursuant to a "three strikes" rule.

On April 5, 2002, McFadden brought this action in the United States District Court for the Western District of Texas, claiming violation of Title VII of the Civil Rights Act of

---

[1] Dalton, the disciplinary captain, received a copy of this charge on February 22, almost three weeks after Britt said he prepared it. TDCJ policy dictates that McFadden should have had notice of the charge within ten days. The delay was unexplained.

3

1964, and § 451.001 of the Texas Labor Code. The district court denied in part TDCJ's pretrial motion for summary judgment on October 30, 2003, and the matter proceeded to trial. Following a three-day trial, on November 6, 2003, the jury returned a verdict in favor of McFadden, awarding $75,000 for back pay and $200,000 for mental anguish. Arguing that McFadden's evidence was insufficient to support the verdict, TDCJ moved for JMOL pursuant to Fed. R. Civ. P. 50(b) on December 30, 2003. The district court granted the motion in a memorandum opinion dated March 24, 2004. McFadden timely appealed on July 2, 2004.

## II. STANDARD OF REVIEW

This Court reviews the district court's grant of JMOL de novo. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2001). JMOL shall be granted "when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Id. The record must reveal "more than a mere scintilla of evidence" for this Court to reverse the grant of JMOL. Id.

## III. DISCUSSION

A. Title VII Analytical Framework

McFadden claims that his termination was motivated by racial animus, in violation of Title VII of the Civil Rights Act of 1964. A Title VII case built on circumstantial evidence, like McFadden's, is analyzed under the McDonnell-Douglas framework. Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003) (citing McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Under this framework, the plaintiff must first create a presumption

4

of discrimination by making out a prima facie case of discrimination.  Laxton, 333 F.3d at 578.  The burden of production then shifts to the defendant to establish nondiscriminatory reasons for its actions.  Id.  The plaintiff then bears the burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against the plaintiff because of the plaintiff's protected status.  Id.

To meet this burden of persuasion, the plaintiff must produce evidence showing that the proffered legitimate reason is a pretext for discrimination.  Id. (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000)).  The plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or not credible.  Id.  "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action."  Id.

B.  Evidence of Pretext

The district court's grant of JMOL achieved the correct result because McFadden failed to introduce evidence sufficient to support a finding that TDCJ's proffered reasons for McFadden's termination were pretextual, either because disparate treatment occurred or because TDCJ's proffered explanation is false or not credible.

1.  Disparate Treatment

McFadden has offered no evidence to show that any of his supervisors at TDCJ treated him less favorably than employees of other races at any stage in the disciplinary proceedings.  McFadden's arguments concerning Lyle Kastner, a white male whose position was reinstated as a result of mediation, are unavailing, because McFadden does

5

not allege discrimination in the mediation process. Evidence supporting the proposition that bias may have impacted the mediation process is not probative of whether employees of different races were treated differently in initial termination decisions.

## 2. Credibility of Reasons

McFadden has failed to show that TDCJ's proffered reasons for termination are not worthy of credence. McFadden argues that failing to call in every day was not a violation of any existing rule, and this may well be the case. This argument does not show, however, that McFadden was not in fact terminated for failing to call in every day. TDCJ alleges that calling in every day was an unspecified work rule, and Britt and Kinker testified that communication during an absence is regarded as important at TDCJ. While TDCJ's reasons for firing McFadden may seem arbitrary or even unfair, as the district court suggested, McFadden has not shown that these reasons were pretextual.[2] The jury's finding of discrimination was therefore unsupported by the evidence, and JMOL was appropriate.

## IV. CONCLUSION

Because McFadden failed to introduce evidence to support a finding that TDCJ's proffered reasons for his termination were pretextual, the decision of the district court granting TDCJ's motion for JMOL is AFFIRMED.

---

[2] McFadden also points to the various irregularities surrounding TDCJ's handling of McFadden's case to show that the proffered reasons were pretextual. None of these irregularities, however, show that the reasons were not the real reasons for his termination.

6