**Vanita MARTIN, Plaintiff–Appellant,**

**v.**

**CITY OF NEW YORK, Defendant–Appellee,**

City of New York Department of Corrections, Bernard B. Kerik, Corrections Commissioner, Edward Reilly, Chief, Howard Robertson, Warden and Allen Kozich, as aiders and abettors, and as Supervisors, Agents and Employees and all those acting in concert with them, Defendants.

No. 04–5313–cv.

United States Court of Appeals, Second Circuit.

July 31, 2006.

Lawrence Solotoff, Solotoff & Solotoff, Esqs. (Cheryl Solotoff, on the brief), Great Neck, NY, for Appellant.

Edward F.X. Hart, Assistant Corporation Counsel (Michael A. Cardozo, Corporation Counsel of the City of New York; Leonard Koerner, Chief Assistant; and Drake Colley, Senior Counsel, on the brief), New York, NY, for Appellee.

Present JOHN M. WALKER, JR., Chief Judge, DENNIS JACOBS and PETER W. HALL, Circuit Judges.

### SUMMARY ORDER

Vanita Martin ("Martin") appeals from the judgment of the United States District Court for the Eastern District of New York (Charles R. Wolle, J.) in favor of the City of New York entered September 1, 2004, notwithstanding a jury verdict in Martin's favor on two of her three claims. The district court granted the City's motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). We assume familiarity with the facts, the procedural history, and the specification of issues for review.

Martin has been an Intake Supervisor at an all-male inmate detention facility, the Queens House of Detention for Men ("QHDM"), since 1996. The intake procedure at QHDM involves an initial screening of inmates with a metal detector (or "magnometer"), followed by a strip-search and, in some cases, a body cavity search. If the magnometer goes off in the initial screening, the inmate is required to walk through the device a second time after the strip-search and without his clothing. Because of a shortage of jumpsuits at the QHDM, some inmates were forced to walk naked through the second screening.

On April 15, 1998, following two security breaches that occurred in the weeks prior, Warden Howard Robertson of QHDM issued Command Order 42/98, effective April 20, 1998, which provided that Intake Supervisors be "physically present to supervise the search procedures." Although Command Order 42/98 does not define "physically present", Martin and her colleagues construed the term to require the presence of Intake Supervisors (including Martin) at the magnometer during the screenings. Martin and her colleagues complained to Warden Robertson that Command Order 42/98 violated the City of New York's policy requiring that strip searches be performed only by prison per-

sonnel of the same sex as the inmate being searched, *see* New York City Dept. of Corrections, Command Level Order 99/97, Art. V.C, and that Martin's presence during the screening of the inmates would cause disruption and would cause Martin humiliation and degradation. Warden Robertson replied that the "order stands as written" and that it "comes with the territory." In the period from April 20 until May 12 (when Martin was informed her presence was not required), Martin witnessed hundreds of naked inmates. The only woman present, she was verbally harassed and threatened and she witnessed various lewd acts by inmates, causing her to suffer emotional and psychological distress.

Martin argues that we should reinstate the jury's verdict in her favor on two claims: (1) that she suffered disparate treatment because of her sex, in violation of 42 U.S.C. § 2000e–2(a)(1), when she was required to be present at the intake magnometer at the same time as nude male inmates; and (2) that she was subjected to a hostile work environment, also in violation of § 2000e–2(a)(1), because she endured the abusive behavior of inmates while she was present at the magnometer.

We review *de novo* the district court's grant of judgment as a matter of law. *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 167 (2d Cir.2003). We will uphold the district court's grant of judgment only if the record reveals "no legally sufficient evidentiary basis for a reasonable jury to find" in Martin's favor. Fed. R.Civ.P. 50(a)(1). In assessing whether a reasonable jury could find in plaintiff's favor, we must draw all reasonable inferences in plaintiff's favor and may not make credibility assessments or weigh the evidence. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

In entering judgment for the City, the district court assumed that Command Order 42/98 modified the City's policy prohibiting strip-searches by prison officials of the opposite sex as inmates, and held that the modification was gender neutral, that there was no evidence that the modification had been instituted because Martin is a woman (but was rather instituted to address two security lapses that had occurred in the weeks prior), and that the offensive inmate behavior triggered by a woman's presence (Martin's) was not imputable to Martin's employer. We would agree with this analysis if this were the only construction of the evidence in the record: We see no reason why the City or a prison facility could not order supervisors—including supervisors of the opposite sex of inmates—to be present during intake and strip searches if this policy furthered a legitimate interest; moreover, the lewd behavior of inmates in the presence of a female official does not, without more, make out a Title VII claim against the defendants.

The evidence permits a different construction, however. Warden Robertson testified that he never intended that Command Order 42/98 would modify the City's policy against opposite-sex strip searches; indeed, shortly after imposing the order he wrote to Martin to tell her that she need not stand by the magnometer as nude inmates were screened. Martin and several of her colleagues testified, however, [i] that Warden Robertson knew that the reason Martin was forcing inmates to strip in front of her was because she erroneously believed that this was required under Command Level Order 42/98, and [ii] that Warden Robertson deliberately allowed Martin to act on that mistaken belief, and even fostered this belief, knowing that she would be the target of the inmates' offensive gestures and comments. The jury

therefore could have properly found Title VII liability: the evidence supports the reasonable inference that Martin was treated differently from her male colleagues and that defendants instigated the inmates' offensive behavior. *See Weston v. Pennsylvania,* 251 F.3d 420, 428 (3d Cir. 2001).

For the foregoing reasons, the judgment of the district court is **REVERSED** and **REMANDED** with instructions to enter a judgment consistent with this Opinion.