**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALISON N. TERRY, | No. 09-55579 |
| Plaintiff - Appellant, | D.C. No. 3:06-cv-01459-MMA-CAB |
| v. | |
| CITY OF SAN DIEGO, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Southern District of California
Michael M. Anello, District Judge, Presiding

Argued and Submitted May 5, 2010
Pasadena, California

Before: B. FLETCHER and PAEZ, Circuit Judges, and EZRA, District Judge.[**]

Lifeguard Alison Terry appeals the district court's grant of summary

judgment to the City of San Diego ("the City"). Terry argues that the City violated

42 U.S.C. § 2000e-2 (Title VII) and California Government Code § 12940(a) when

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**] The Honorable David A. Ezra, United States District Judge for the
District of Hawaii, sitting by designation.

the City failed to promote her to a permanent lifeguard position because of her gender, and then retaliated against her after she filed her complaint. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand.[1]

First, we conclude that Terry established a prima facie case of gender discrimination under a theory of disparate impact. In opposition to the City's motion for summary judgment, Terry submitted an expert report from a statistician who compared the number of female permanent lifeguards to the number of female seasonal lifeguards (Lifeguard Is) and concluded that female lifeguards are disparately impacted by the promotion process used by the City. The district court erred when it disregarded this evidence after concluding that Terry's expert should have limited his comparison pool to those who actually applied for the promotion. *See generally Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174 (9th Cir. 2002). "Federal courts have rejected defendant's arguments that statistical analysis should be limited to a pool of 'qualified applicants' where the job qualification standards are themselves discriminatory." *Id.* at 1187 n.17 (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 563-64 (8th Cir. 1992) and *Forehand v. Florida State Hosp.*, 89 F.3d 1562, 1574 (11th Cir. 1996)); *see also Int'l Bhd. of Teamsters v. United*

---

[1]We review de novo a grant of summary judgment. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004).

2

*States*, 431 U.S. 324, 365-66 (1977); *Bates v. United Parcel Serv.*, 465 F.3d 1069, 1079 (9th Cir. 2006).

Drawing all inferences in favor of the non-moving party, we conclude that Terry's evidence in her opposition briefing was sufficient to establish a prima facie case that the City's promotion practices have a disparate impact on female lifeguards. Because the City did not attempt to "defend against liability by demonstrating that the practice is 'job related for the position in question and consistent with business necessity,'" *Ricci v. DeStefano*, 129 S. Ct. 2658, 2673 (2009) (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)), we reverse the district court's grant of summary judgment to the City on Terry's claim of employment discrimination under a theory of disparate impact, and remand for trial.

Second, we conclude that Terry established a prima facie case of gender discrimination under a theory of disparate treatment, because (1) Terry is a female and thus a member of a protected class, (2) Terry was "highly qualified" for a promotion to Lifeguard II, (3) Terry suffered an adverse employment action when she did not receive a promotion to the Lifeguard II position, and (4) six similarly situated male Lifeguard Is were treated more favorably when they were offered the

3

promotion.[2] *See Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1123 (9th Cir. 2009).

After a plaintiff makes her prima facie case, "[t]he burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the action." *McGinest*, 360 F.3d at 1122 n.16 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). The City met this burden by presenting declarations stating that Terry was not promoted because she was not as qualified as other candidates.

Thus, at the summary judgment stage, the burden shifted back to Terry to show "that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Nicholson*, 580 F.3d at 1126-27 (quoting *Chuang v. Univ. of Cal. Davis Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000)). In order to avoid summary judgment at this stage, however, we have held "the plaintiff must only demonstrate that there is a

---

[2] One of the six male Lifeguard Is who was offered the promotion failed a background check and the job went to the next Lifeguard on the list who happened to be female. The fact that one woman was eventually offered one of six promotions should not negate the fact that (a) originally all of the Lifeguard Is who were offered promotions were male and (b) five of the promotions did go to similarly situated individuals outside of the protected class.

genuine dispute of material fact regarding pretext. The amount of evidence required to do so is minimal." *Id.* at 1127; *see also McGinest*, 360 F.3d at 1123 ("Because the . . . first two steps of the *McDonnell Douglas* framework ha[ve] been established, 'the sole remaining issue [i]s discrimination vel non.'" (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000))).

Terry easily satisfied this burden by attaching evidence to her opposition brief that suggested the factors upon which promotions depended were themselves infected with discriminatory animus. First, Terry's statistical expert concluded in his expert report that male lifeguards received the highest marks in their annual reviews at a disproportionate rate over female lifeguards, and that "[t]he likelihood of seeing the results which warrant [these disproportionately higher ratings of male lifeguards] from strictly random occurrence or chance is so low, that I conclude that [they] are not due to chance, but to a problem that exists within the evaluation structure and promotion policy of the City of San Diego lifeguard workforce." For the reasons set forth earlier, it was error for the district court to disregard this evidence. *See Hemmings*, 285 F.3d at 1183-90. Second, Terry submitted testimony, declarations, and annual reviews that indicated male lifeguards, but not female lifeguards, were told in advance about non-required courses that would make them more competitive in the promotion process. Finally, Terry submitted

5

declarations that female lifeguards were discouraged from taking the courses and certification tests required for promotion. Because Terry's evidence raises genuine issues of material fact as to whether the City's reasons are nondiscriminatory or pretextual, we reverse and remand for trial Terry's claim of employment discrimination under a theory of disparate treatment.

Finally, we conclude that Terry established a prima facie case of retaliation when the City failed to schedule Terry to work during the summer of 2007 after she engaged in a protected activity by filing this lawsuit. While we have rejected an inference of causality when 18 months pass between the protected activity and the adverse employment action, *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002), we do not require that retaliation take place immediately in order to infer a causal connection. *See, e.g.*, *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000). Because of the seasonal nature of non-permanent lifeguard work, we hold that the fact that Terry was scheduled during the 2006 summer season, but received no work during the 2007 summer season is no different than an employer waiting a few months before firing an employee who engaged in a protected activity.

The City articulated many legitimate nondiscriminatory reasons why Terry was not scheduled for work during the 2007 season. Terry not only disputed many

6

of these reasons in her opposition briefing, but also submitted other evidence suggesting that the reasons given were pretextual.

Faced with genuine issues of material fact, the district court improperly weighed the evidence submitted at the summary judgment stage and found for the City. We thus reverse and remand for trial Terry's retaliation claim.

REVERSED and REMANDED for trial.