

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| AUTOZONE, INC., a Nevada Corporation,<br><br>       Defendant - Appellant,<br><br>  v.<br><br>EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>       Plaintiff - Appellee. | No. 09-16860<br><br>D.C. No. 2:06-cv-00926-SMM<br><br><br>MEMORANDUM[*] |
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>       Plaintiff - Appellant,<br><br>  v.<br><br>AUTOZONE, INC., a Nevada Corporation,<br><br>       Defendant - Appellee. | No. 10-15059<br><br>D.C. No. 2:06-cv-00926-SMM |

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, Senior District Judge, Presiding

---

     [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Circuit Rule 36-3.

Argued and Submitted February 14, 2011
San Francisco, California

Before:  TALLMAN and BYBEE,[**] Circuit Judges, and TARNOW, Senior District Judge.[***]

AutoZone, Inc., appeals and the Equal Employment Opportunity Commission (EEOC), on behalf of claimant Stacey Wing, cross-appeals from a final judgment of the United States District Court of the District of Arizona awarding Wing, pursuant to a jury verdict, $15,000 in compensatory damages and $50,000 in punitive damages on her hostile work environment claim.

AutoZone argues that it could not be liable for the harassment Wing endured because it established at trial the *Ellerth*/*Faragher* "reasonable care" defense to vicarious liability for non-tangible employment action.  *See Faragher v. Boca Raton*, 524 U.S. 775, 807–08 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).  It maintains that the district court erred when it denied AutoZone's motions for judgment as a matter of law or for a new trial.  *See* Fed. R. Civ. P. 50.  AutoZone also contends that the punitive damage award was

---

[**]     Due to the death of the Honorable David R. Thompson, the Honorable Jay S. Bybee, United States Circuit Judge for the Ninth Circuit, was drawn to replace him.  Judge Bybee has read the briefs, reviewed the record, and listened to the audio recording of oral argument held on February 14, 2011.

[***]     The Honorable Arthur J. Tarnow, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

2

inappropriate because the corporation acted in good faith to comply with its obligations under Title VII. The EEOC urges us to uphold the district court's determinations as to these issues but argues that the district court erred by refusing to instruct the jury that denial of a promotion could constitute an adverse employment action sufficient to support a retaliation claim. We have jurisdiction under 28 U.S.C. § 1291, and we affirm on all claims.[1]

First, AutoZone has failed to demonstrate that a reasonable jury would not have had a legally sufficient evidentiary basis to conclude that AutoZone failed to demonstrate at trial "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise," as required by *Faragher*, 524 U.S. at 807, and *Ellerth*, 524 U.S. at 765. *See* Fed. R. Civ. P. 50(a)(1); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149–50 (2000) (requiring all reasonable inferences to be drawn in favor of the non-movant).

Viewing the evidence in the light most favorable to the jury's determination, the jurors could reasonably have determined that Wing's district manager, James

---

[1] The parties are familiar with the facts of the case so, except as necessary, we do not repeat them here.

Monti, and her regional human resources manager, Scott Anderson, failed to exercise reasonable care to "correct promptly" the obscene and harassing behavior of Wing's manager, Jose Contreras, when Wing brought it to their attention. Despite AutoZone's policy requiring an immediate investigation of any harassment claim, evidence at trial demonstrated that Monti did nothing other than tell Wing to call Anderson. Though Anderson did investigate, a reasonable juror could question the efficacy and good faith of his investigation.

At trial, evidence was introduced that Anderson never checked any of the video recorded by the store's loss prevention cameras, despite the fact that Wing claimed that Contreras assaulted her in the public part of the store in full view of those cameras.[2] The EEOC introduced evidence that despite AutoZone policy requiring managers to "thoroughly investigate each reported allegation as confidentially as possible," Anderson interviewed Wing about her complaint in a semi-public part of her own store. Evidence was introduced that Anderson never interviewed certain employees, never reported his investigation to the corporate human relations department as required by policy, and never even informed Wing

---

[2] After a newly hired manager complained on Wing's behalf about Contreras's behavior in late November 2003, it was discovered that the cameras did record Contreras's obscene behavior. Anderson later claimed he was unaware of the cameras' presence—a claim another regional manager testified was untrue.

of the outcome of his investigation or offered her a transfer to another store. Certainly, AutoZone's inability to produce any documentation corroborating that Anderson had even conducted an investigation—documentation its own policies required it to create and maintain—and its loss of the video evidence of Contreras's lewd conduct cast doubt as to its actions. Contrary to AutoZone's claim, this evidence also readily distinguishes AutoZone's corrective efforts from the corrective efforts of the university in *Holly D. v. California Institute of Technology*, 339 F.3d 1158, 1177–78 (9th Cir. 2003).

Also distinguishing Wing's case from *Holly D.* is the fact that Wing did not wait a year or more before availing herself of AutoZone's preventive or corrective opportunities. *Cf. id.* at 1178–79. She complained to Contreras immediately and repeatedly, complained to Monti within days, and complained to Anderson within two weeks of the beginning of Contreras's harassing conduct. *Cf. id.* The jury thus had sufficient evidence to conclude that Wing did not unreasonably fail to take advantage of corrective opportunities provided by AutoZone.

Second, AutoZone was not immune from punitive damages because a reasonable juror could certainly have determined that it had not acted in good faith to comply with Title VII. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545 (1999); *Swinton v. Potomac Corp.*, 270 F.3d 794, 809–11 (9th Cir. 2001). As

noted by the district court, a juror could conclude that any one of AutoZone's failures to take appropriate corrective action[3] or even its failure to maintain critical evidence amounted to a lack of good faith. *Swinton*, 270 F.3d at 810–11 (Even assuming the employer was entitled to a good faith defense, "it is well established that it is insufficient for an employer simply to have in place anti-harassment policies; it must also implement them.").

Finally, the district court did not err by refusing to instruct the jury as to the EEOC's denial theory of retaliation. While a refusal to consider an employee for promotion is "[a]mong those employment decisions that can constitute an adverse employment action," *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000), the EEOC abandoned that basis of its retaliation claim in the final pretrial order, choosing instead to proceed strictly on a withdrawal of promotion theory about which the jury was instructed. *See* Fed. R. Civ. P. 16(c) ("formulating and simplifying the issues" to be tried). Because the EEOC never moved to amend the final pretrial order, the district court was never given an opportunity to determine

---

[3] After witnessing the video of one of Contreras's assaults on Wing, Anderson reportedly chastised Wing for striking Contreras during the assault, stating, "[AutoZone] would have to make a determination as to whether they would let her come back to work or if [she] was going to lose [her] job for insubordination," and sent Wing home from work. The evidence also showed that Contreras was not fired but was permitted to resign from his position, and Anderson made no mention of his misconduct in any of the separation paperwork.

whether an amendment should be permitted to avoid manifest injustice. *Compare Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608–09 (9th Cir. 1992) (concluding that a party must specifically request a district court to amend its pretrial order and may not later argue that its objections or assertions amounted to a "de facto motion to amend"), *with Galdamez v. Potter*, 415 F.3d 1015, 1020 (9th Cir. 2005) (burden of demonstrating manifest injustice on moving party).

As a result, the EEOC is not entitled to relief, regardless of the reasons it now proffers for its failure. *World Wide Rush, LLC v. City of L.A.*, 606 F.3d 676, 690 (9th Cir. 2010) ("The district court could not rule on a motion that [World Wide Rush ("WWR")] never made, and we reject WWR's attempt to appeal a nonexistent denial of a nonexistent motion. Given the absence of an adverse ruling from which it may appeal, WWR argues that it would have been futile to seek leave to amend the complaint in light of the district court's statement that such requests would not be entertained. We do not share WWR's view that the district

7

court's admonition was an excuse for WWR's failure to at least proffer a proposed amendment to the pleadings.").[4]

**AFFIRMED.**

---

[4] Furthermore, though not explicitly instructing the jury that denial of a promotion could serve as a separate ground for finding an adverse employment action, the court did instruct the jury that any action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination" could constitute an adverse employment action. Thus, were it not for the EEOC's failure to move to amend the pretrial order as our caselaw requires, we might still question whether the claimed error was "more probably than not harmless." *Swinton*, 270 F.3d at 805 (quoting *Caballero v. City of Concord*, 956 F.2d 204, 206–07 (9th Cir. 1992)).