# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-40525
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2014

Lyle W. Cayce
Clerk

JIEA M. RUTLAND-SIMPSON,

Plaintiff-Appellant

v.

ELI LILLY and COMPANY,

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:12-CV-158

Before DAVIS, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Jiea Rutland-Simpson appeals from the district court's grant of summary judgment in her Title VII retaliation action against her former employer Eli Lilly. We AFFIRM.

## FACTUAL BACKGROUND

Rutland-Simpson—a 45-year-old African-American female with 17 years of experience as a pharmaceutical sales representative—began working for

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Lilly as a Senior Sales Representative ("SSR") on June 13, 2008. Rutland-Simpson's job as an SSR required her to market Lilly's drugs by making "sales calls" on "health care providers." Rutland-Simpson initially reported to District Sales Manager Michael Zatopek, but began reporting to Thomas Raborn in May 2010.

Raborn accompanied Rutland-Simpson on a field visit on November 9, 2010. Rutland-Simpson claims that, during the field ride, Raborn made several comments that caused her concern. First, Raborn asked Rutland-Simpson which employees in a visiting doctor's offices were "Mexican" and which were not "Mexican." Rutland-Simpson responded that Raborn "couldn't ask who was Mexican," as Mexicans "can have blond hair and blue eyes." Raborn apparently agreed that you could not determine a person's nationality by appearance alone and explained that he had seen a physician earlier that week who was dark-skinned and wore a big belt buckle and boots, and he was Iranian. Later that day, Rutland-Simpson mentioned that her daughter spoke Spanish because her babysitter was raising her. According to Rutland-Simpson, Raborn responded by stating, "She can be an African-Mexican." Also later that day, while calling on a Black Rwandan doctor and his Spanish speaking staff, Raborn told the staff that he did not speak Spanish and was just a "good ol' Georgia American boy" or something to that effect. During the ride, Raborn also told Rutland-Simpson that she had great relationships with customers, but they should be writing more prescriptions.

Shortly after the field visit, Rutland-Simpson called fellow sales representative Jennie Anthony to tell her what transpired during the field visit with Raborn, but did not tell Anthony that she felt discriminated against. Raborn subsequently learned from Anthony or sales representative Nikki DiLiddo that Rutland-Simpson was frustrated and believed Raborn had made

racial comments.[1] When Raborn contacted human resources regarding the situation, he was told not to do anything as it may have been a miscommunication.

Rutland-Simpson alleges that Raborn immediately retaliated against her for opposing his racist comments by assigning her to complete five new speaker programs by the end of the year, while no other sales representative was required to complete any programs. Raborn counters that Rutland-Simpson's team had failed to meet its speaker contractual obligations before the end of the year, hence the assignment.

On December 1, 2010, Rutland-Simpson called the Human Resources hotline to report her issues with Raborn; the hotline transferred Rutland-Simpson's complaint to the investigations team for follow-up. In her initial call to the hotline and subsequent conversation with Human Resources Representative Miles Houze on January 25, 2011, Rutland-Simpson relayed Raborn's so-called "racist comments" and allegedly maintained she felt singled-out. According to Rutland-Simpson, Houze informed her that "Lilly had issues with race" and that Raborn's conduct constituted race discrimination. Houze offered to speak to Raborn for Rutland-Simpson, but she felt it was better to do so herself. Houze closed Rutland-Simpson's race-discrimination case on January 30, 2011, without interviewing any of Rutland-Simpson's co-workers or otherwise undertaking an investigation; he concluded that "[t]here was no evidence to substantiate discrimination toward EE Simpson at this time." Houze did not speak to Raborn about Rutland-Simpson's concerns, and Raborn did not learn about the call until Rutland-Simpson had been discharged.

---

[1] Raborn maintains that he does not remember which sales representative told him of Rutland-Simpson's complaints. The source is immaterial.

On February 8, 2011, Raborn lodged a complaint against Rutland-Simpson with Lilly's Human Resources department. While reviewing Rutland-Simpson's expense reports, Raborn noticed that Rutland-Simpson submitted claims for cash expenses for customer lunches that did not match the date on which she reported the lunch occurring in the call reporting system. Upon further review of Rutland-Simpson's call activities and related reports, Raborn discovered additional issues, including that Rutland-Simpson (1) entered her sales calls late, e.g. entered all December calls on December 20 and entered 69 out of 79 total January calls on January 28; (2) did not record sales calls during the last week of December and also did not notify Raborn of any vacation time; (3) recorded only one call per day on three occasions and only three calls per day on nine occasions; and (4) submitted expense reports late and with expenses over the allowable limit. When Raborn reported these possible violations of Lilly policy, human resources referred the matter to HR Representative Jamie Preston for investigation. In response to Raborn's inquiries, Rutland-Simpson provided some explanation for the discrepancies and admitted that she had made several mistakes, including entering the wrong date for lunch programs.

During the investigation, Raborn and Preston discovered numerous conflicts between Rutland-Simpson's call reporting and out-of-territory reports, e.g. recording multiple sales calls on days for which she also recorded that she was out-of-territory at a quota trip. Preston also called health care providers for whom Rutland-Simpson's recorded lunch dates did not match her expense report to determine whether Rutland-Simpson had held lunches at their offices; the providers reported that Rutland-Simpson did hold lunches at their offices but not on the day reported. Raborn and Preston met with Rutland-Simpson to get her explanation of the discrepancies. Raborn and

Preston then conferred with Elizabeth Ackley, Manager of EEO and Affirmative Action, who agreed that Rutland-Simpson's input did not explain the discrepancies. After a follow-up meeting with Rutland-Simpson, Preston and Raborn terminated her for falsifying documents.

Following her termination, Rutland-Simpson met with compliance officer Don Mason and "explained the entire situation." Rutland-Simpson maintains that the investigation was tainted by Raborn's bias against her, that the investigation failed to corroborate Raborn's claim that she had engaged in sales call/expense report falsification, and that she had vigorously denied any wrongdoing. She further maintained that, in terminating her for falsification, Lilly failed to credit extensive evidence that numerous white sales representatives "falsely" reported sales calls and Lilly failed to discipline or terminate those employees. HR Representative Ryan Robinson investigated each allegation, and ultimately determined that the investigation and subsequent termination of Rutland-Simpson did not violate company policy.

Rutland-Simpson filed a Charge of Discrimination against Lilly with the EEOC. After exhausting her EEOC administrative remedies, Rutland-Simpson filed suit against Lilly. She alleged that Lilly subjected her to race discrimination and retaliation for opposing race discrimination in violation of Title VII of the Civil Rights Act of 1964. The district court granted Lilly's motion for summary judgment.

Rutland-Simpson timely appeals the district court's dismissal of her retaliation claim. She maintains the district court erred in granting Lilly's motion for summary judgment on her Title VII retaliation claim, because she raised a genuine issue of material fact that, in retaliation for her opposition to Raborn's race discrimination, Raborn subjected her to materially adverse actions culminating in her termination. Rutland-Simpson further maintains

that the district court failed to credit substantial evidence establishing that Lilly's "legitimate, nondiscriminatory reason" of document falsification for terminating Rutland-Simpson was pretextual and that Raborn's oppositional conduct was the "but-for" cause of her termination.

## STANDARD OF REVIEW

We review *de novo* the district court's grant of a summary judgment, applying the same legal criteria used by the district court. *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir. 2003). Summary judgment is appropriate where the evidence, construed in the light most favorable to the non-moving party, shows that there is "no genuine dispute as to any material fact" and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Tolan v. Cotton*, 134 S.Ct. 1861 (2014). In assessing the summary judgment record: (1) all evidence favorable to the non-moving party must be credited; (2) "all evidence favorable to the moving party that the jury is not required to believe" must be disregarded unless it is "uncontradicted," "unimpeached," or comes from "disinterested witnesses"; (3) all reasonable inferences must be drawn in favor of the nonmoving party; (4) the district court may not make credibility determinations or weigh the evidence; and (5) the non-moving party's "prima facie case, combined with sufficient evidence to find the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097, 2109-2110 (2000).

## DISCUSSION

To establish a *prima facie* case of retaliation under Title VII, Rutland-Simpson must establish that she engaged in a protected activity, that she was subjected to an adverse employment action, and that there is a causal link between the two. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir.

2007). If she makes a prima facie showing, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action. *McCoy*, 492 F.3d at 557 (5th Cir. 2007). If the defendant meets its burden of production, the burden shifts back to the plaintiff to prove pretext. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).

Relying on the district court's finding, we assume *arguendo* that Rutland-Simpson established a prima facie case for retaliation. Specifically, the district court found that Rutland-Simpson had established a prima facie case of retaliation because (1) her termination constituted an adverse employment action; (2) her calls to the human resources hotline on December 1, 2010, and March 3, 2011, were protected activities;[2] and (3) Raborn's potential knowledge of Rutland-Simpson's complaints combined with his involvement in the termination sufficed to establish a causal link. We likewise agree with the district court—and Rutland-Simpson does not dispute—that Lilly met its burden of producing a legitimate, nonretaliatory reason for Rutland-Simpson's termination by citing her alleged sales call/expense report falsification.

Rutland-Simpson contends, however, that Lilly's stated reason—her alleged sales call/expense report falsification—was merely pretext for her termination. "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as thorough evidence of disparate treatment, or that [her employer's] explanation is unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (internal quotation marks and citations omitted). As evidence

---

[2] The district court found, however, that Rutland-Simpson's conversation with Jennie Anthony about the November 2011 field ride was not a protected activity as there was no indication that she was either reporting or resisting discriminatory behavior, but rather was venting to a friend who was neither in management nor human resources.

of disparate treatment, Rutland-Simpson argues that she received increased scrutiny of her reports and sales as well as additional work after her November 10 field ride. However, she presents no evidence that she received more scrutiny or work than other similarly situated employees. Nor does she present evidence that other employees who allegedly falsified their reporting to the same extent were not terminated.[3] Rutland-Simpson further maintains that, under *Reeves*, 120 S.Ct. at 2109-2110, none of Raborn's testimony should have been credited, especially because Raborn knew of Rutland-Simpson's complaints from Jenny Anthony. In Rutland-Simpson's view, absent Raborn's testimony, Lilly's given explanation of falsification is unworthy of credence. However, it is undisputed that Rutland-Simpson documented sales calls which in fact did not occur. Rutland-Simpson maintains that she made all the sales calls recorded, but inputted wrong dates for some, which is not a terminable offense. But it is Lilly's policy that calls must be accurately documented. Thus classifying improperly documented calls as call falsification and grounds for termination does not constitute pretext.

As Rutland-Simpson has not demonstrated that classifying improperly documented calls as falsified calls was at odds with Lilly's internal policies or that she was treated differently than similarly situated employees, we hold Rutland-Simpson has not met her burden of proving the stated reason for her termination— her alleged sales call/expense report falsification—was pretext.

**CONCLUSION**

For the reasons set forth above, we AFFIRM the district court's grant of summary judgment.

---

[3] Rutland-Simpson maintains Lilly did not discipline other pharmaceutical sales representatives who recorded sales calls on Dr. Hernandez despite not having had face-to-face dialogue with him about Lilly products. But there is no evidence these other sales representatives had Rutland-Simpson's pattern of call falsification or misreporting.